NEWMAN *v*. STATE OF INDIANA.

[No. 669S133. Filed August 31, 1970. Rehearing denied December 17, 1970.]

*Frederick J. Graf,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Hassett,* Deputy Attorney General, for appellee.

JACKSON, J.—This was a criminal action commenced by the State of Indiana by filing an Indictment charging the defendant-appellant, Danny Newman, and three other persons, Robert Frye, William Penn and Clinton Wadlington, with the

felonies of Kidnapping, as defined by Burns Indiana Statutes Annotated § 10-2901, and Rape, as defined by Burns Indiana Statutes Annotated § 10-4201.

Appellant Newman was tried separately in said court by a jury, the trial beginning on January 28, 1969, and the verdict of the jury was rendered January 31, 1969. The verdict of the jury found the defendant's age to be 21 years, and the appellant was found guilty of the crime of kidnapping and on that charge was sentenced to the Indiana State Prison for life, and was likewise found guilty on the charge of rape and on that charge was sentenced to the Indiana State Prison for not less than two nor more than twenty-one years.

The indictment in two counts charging the appellant with the crimes of kidnapping and rape reads, in pertinent part, as follows:

"The Grand Jury for the County of Marion in the State of Indiana, upon their oath do present that ROBERT FRYE; DANNY NEWMAN; WILLIAM PENN; CLINTON WADLINGTON on or about the 4th day of AUGUST, A.D. 1967, at and in the County of Marion and in the State of Indiana, did then and there feloniously, fradulently and forcibly carry away, decoy and kidnap the following person, namely: DONNA BARTON, from a place within said State of Indiana, to-wit: 21st and Station Streets, City of Indianapolis, in said County of Marion, in said State of Indiana, with the felonious intention then and there and thereby of carrying the said DONNA BARTON, away from said place within said State and said acts were not then and there done in pursuance of the laws of the State of Indiana or of the United States, then and there being contrary to the form of the statute of such case made and provided, and against the peace and dignity of the State of Indiana.

*COUNT TWO:*

The Grand Jurors aforesaid, upon their oaths aforesaid, do further present that ROBERT FRYE; DANNY NEWMAN; WILLIAM PENN and CLINTON WADLINGTON, on or about the 4th day of August, 1967, at and in the County of Marion and the State of Indiana, did then and there unlawfully and feloniously have carnal knowledge of DONNA BARTON, a woman, forcibly and against her will, she the

said DONNA BARTON, then and there not being the wife of ROBERT FRYE; DANNY NEWMAN; WILLIAM PENN or CLINTON WADLINGTON, or either of them, then and there being contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana."

On May 16, 1968, the appellant filed his notice of alibi, to which the State filed its answer on May 20, 1968.

The State, on January 13, 1969, orally moved for a joint trial of the four defendants named in the indictment. This motion was overruled by the trial court.

On January 27, 1969, the appellant filed a motion to suppress evidence which reads, omitting formal parts and memorandum, as follows:

"Comes now the defendant, DANNY NEWMAN, by his attorney, FELSON BOWMAN, and for his motion to suppress evidence would respectfully show the Court as follows:

1. The defendant, Danny Newman (hereinafter referred to as 'defendant'), is a defendant in the above-entitled cause which is a prosecution for Rape and Kidnapping.

2. That the defendant was arrested by certain members of the Indianapolis Police on or about the 6th day of August, 1967, and taken to the Homicide office of the Indianapolis Police Department.

3. That while being confined at the aforesaid Homicide office, the defendant was not represented by counsel, nor was he given an opportunity to secure counsel. Further, that the defendant was denied the right to counsel although he did not waive said right to counsel.

4. That during the confinement as aforesaid, the defendant was forced to appear in a lineup wherein the defendant was the only person in the said lineup, and where the alleged victim, and prosecution witness, DONNA BARTON, was asked to identify the defendant. Further, that the above lineup was conducted at a time where the defendant was not represented by counsel, nor afforded an opportunity to secure one.

5. That defendant was prejudiced and denied due process of law because of the suggestive nature of the aforesaid lineup.

6. That since the aforesaid lineup was conducted, the aforesaid witness has viewed the defendant and viewed pictures of the defendant.

7. That the defendant would be prejudiced by any statements of the prosecution witness regarding his identification.

WHEREFORE, the defendant prays that this Court order suppressed all testimony of the witness, DONNA BARTON, regarding identification of the defendant."

After the hearing upon the motion to suppress the trial court sustained the portion of the motion dealing with the identification of the appellant by the prosecuting witness at the pre-trial lineup, and ordered the prosecutor to make no reference to the pre-trial identification during trial.

On February 28, 1969, the appellant filed a "Motion in Arrest of Judgment or, In the Alternative, Motion to Amend the Verdict." Omitting formal parts and memorandum, that motion reads as follows:

"Comes now the defendant, DANNY NEWMAN, by his attorney, FELSON BOWMAN, and for his Motion in Arrest of Judgment or, in the Alternative, Motion to Amend the Verdict, would respectfully show the Court, as follows:

1. That defendant, Danny Newman (hereinafter referred to as 'defendant'), was a defendant tried separately by jury in the above-entitled cause which is a grand jury prosecution by indictment in two Counts for (No. 1) kidnapping, and (No. 2) rape.

2. That the defendant was, on the 31st day of January, 1969, found guilty on both Counts, and was, thereafter, sentenced to life imprisonment upon Count I, and for imprisonment of not less than two (2) nor more than twenty-one (21) years as to Count II.

3. That the grand jury which found the indictment had no legal authority to inquire into the offense charged in Count I for the reason that such charged offense (federal kidnapping) was not within the jurisdiction of the instant State Court.

4. That, in any event, judgment should only have been entered for the greater offense, which in this case was 'kidnapping.' It was error to enter judgment for *both* kidnap-

ping (a greater offense with a possible sentence of life in prison) and rape (a lesser offense with an indeterminate sentence of not less than two (2) nor more than twenty-one (21) years in prison.)

WHEREFORE, the defendant prays that this Court arrest judgment as to *both* Counts or, in the alternative, that this Court order the verdict be amended and judgment rendered accordingly on but one Count of the conviction."

On the same date the appellant filed his motion for a new trial which reads, in pertinenut part, as follows:

"Comes now the defendant, Danny Newman, in the above entitled cause, and respectfully moves that the Court grant him a new trial herein for the following causes, or any one of them:

1. Irregularity in the proceedings of the Court in overruling the defendant's motion to suppress evidence and in thereafter admitting such evidence and the poisoned 'fruit' thereof against defendant.

2. Irregularity in the proceedings of the Court for failing before trial to discharge defendant for delay under Supreme Court Rule 1-4D.

3. Error of law occurring at the trial in this, to-wit: That the Court erred in refusing to give defendant's tendered Instruction No. 1, not covered by other instructions given.

4. Error of law occurring at the trial in this, to-wit: That the Court erred in refusing to give defendant's tendered Instruction No. 2, not covered by other instructions given.

5. Error of law occurring at the trial in this, to-wit: That the Court erred in amending defendant's tendered Instruction No. 3 before so instructing the jury as the unamended instruction tendered by defendant is a correct statement of the law not otherwise covered by other instructions given.

6. Error of law occurring at the trial in this, to-wit: That the Court erred in refusing to give defendant's tendered Instruction No. 4, not covered by other instructions given.

7. Error of law occurring at the trial in this, to-wit: That the Court erred in amending defendant's correctly stated and tendered Instruction No. 5, before instructing the jury, for the reason that the instruction, as amended, distorts the otherwise correct statement of the law in the unamended version of the instruction all to the harmful

prejudice to the presumption of innocence then surrounding the defendant.

8. Irregularity in the proceedings of the Court and orders of the Court and abuse of discretion by which the defendant was prevented from having a fair trial in this, to-wit:

The Court permitted Police Sgt. Lund to remain in the courtroom at all times with the Deputy Prosecuting Attorney after previously granting a motion to separate the witnesses. Sgt. Lund was a witness for the State and was so designated on the original Indictment.

9. Error of law occurring at the trial in this, to-wit: That the Court erred in permitting the case to go to the jury at the conclusion of all the evidence over the objection of the defendant.

10. Error of law occurring at the trial in this, to-wit: That the Court erred in failing to arrest the judgment as to Count One on its own motion when it became apparent that such offense was not within the jurisditcion of the Court.

11. The defendant was not accorded his respective constitutional privileges against self-incrimination as provided by the Constitution of Indiana, Article 1, Section 14, and by the Constitution of the United States, Amendment 5; for the reason that the State's best evidence against him was based upon and flowed substantially from the results of extra-judicial pre-trial interrogation of the defendant without a prior fair explanation to him, or knowledgeable waiver by him, of his several constitutional rights.

12. The verdict of the jury is not sustained by sufficient evidence.

13. The verdict of the jury is contrary to law."

Both of these motions were overruled by the trial court on March 13, 1969. On appeal the assignment of error is the single specification: "1. The trial court erred in overruling appellant's motion for a new trial."

The evidence most favorable to the State may be summarized as follows.

On August 4, 1967, the victim Donna Barton and her husband had dinner at the Embers Night Club and took in the show after having had the evening meal and several drinks.

At about 10:30 or 11:00 p.m. they left to go home in their car. On the way home they had an argument, and the victim got out of the car at Massachusetts and Valley and started walking east on Massachusetts.

At 21st and Massachusetts she noticed two men running after her. She started to run but they grabbed her, threw her in some bushes and put something like a sweater over her face. They told her to be quiet as they waited for traffic to clear. Then those men picked her up, one holding her by the feet and the other by her arms and carried her across the railroad track into some bushes where two other men were waiting. The location was well lighted, having several overhanging street lights about twenty-five to fifty feet apart.

She pretended to have fainted. She heard someone say "She has rings and a watch on." They went through her purse, and took her rings and watch. Then two of the men grabbed her under the arms while the other two started to pull her girdle and panties off. After removing her underclothes one of the men started to have intercourse with her, but something alarmed them and he quit and they all crouched. Then each man grabbed an arm or leg of the victim and carried her to a parked car where they put her in the trunk of the car. One of the four men also got into the trunk with her.

The victim saw the appellant very clearly at the railroad track. She pointed to the defendant in the courtroom as one of the four men present there. After she was placed in the trunk the car drove a very short distance when it stopped. She thinks that at that period of time she actually fainted because she had no recollection of being carried into the house. She testified, "I remember being in the house. They took me to a very, very small room and they laid me down on what I assumed, at the time, was a baby mattress because it was soft, or had a plastic top, and I could feel it was very, very short. They raised my hem again and took the top down from my dress, and someone started to have relations, sexual

relations with me, and they said I can't have relations with her. She's too tight. Then somebody else tried, and they said, No wonder you can't have relations with her, she's in her period. Then there was silence for a little while, a few seconds, and then they said, Well that doesn't make any difference. Then they went ahead. Well after that it was just one series of rape right after another, but I can remember one time during the evening all four of them, at one time, had their hands on me. There were more than one act of intercourse but there were times when they weren't having intercourse with me, and during those times, of course, all the time, I had been pretending to be in a coma or something of that nature, and during those times at least someone wasn't having intercourse with me, they would shine a cigarette lighter up and down my body or someone would shine it very, very close to my face, and I could feel the heat from the cigarette lighter, and they would slap my face to see if I were feigning this condition I was in, and apparently I passed the test because someone said, Boy she's really out." "Q. And did you see the defendant? A. Yes I did. Q. Do you know that Danny Newman had sexual intercourse with you? A. Yes, I do. Q. Now do you know whether it was more than once? A. Yes, I am positive. Q. Were all four of these persons present in the room at all times? A. At all times."

The victim further testified that all four of the men charged in the indictment were in the room with her the majority of the time, but later in the evening three of them left leaving Danny Newman alone with her. The defendant-appellant Newman according to her testimony remained with her until the sun came up, which was an hour or two after the others had left. She further testified that when the other three left Newman was having sexual intercourse with her, and when the other three were leaving they said, "Come on Danny let's go and get out of here." He said, "I'm going to stay."

The witness further testified that the defendant-appellant had sexual intercourse with her twice more after the time

she just testified to and that after he had finished with her the last time he got an old curtain and came back and covered her with it and then he left. As soon as she thought he was out of the vicinity she left the house and managed to make her way home where she awakened her husband and told him what had happened. They visited the Doctor and reported to the police.

The evidence of this witness was corroborated by that of one of the co-defendants, Robert Frye, who turned State's evidence and testified on behalf of the State implicating the defendants Newman, Penn and Wadlington and admitting his presence at the scene during the entire proceedings until the three left, but himself denied having had sexual intercourse with the victim.

The Doctor testified as to the physical injuries of the victim and as to the extent of her injuries.

Appellant groups for argument Specifications No. 1, 2, 8, 9, 10 and 11 of his motion for new trial. We are somewhat mystified at appellant's Specification #1. Reference to his Motion To Suppress Evidence relates principally to the identification of the appellant at a single-person lineup at the police station. The court sustained appellant's motion to that phase thereof. For some reason known best to himself, appellant's trial counsel re-opened the door to that inquiry at the trial and cannot now be heard to complain of his own act. *Brower* v. *State* (1956), 236 Ind. 35, 138 N. E. 2d 237.

Specification #2 of appellant's motion for new trial complains of the court's failure to discharge appellant for delay in bringing him to trial under Supreme Court Rule 1-4D. 2. We fail to find in either appellant's brief or in the record and motion for discharge for delay in trial. Such matter cannot be raised for the first time on appeal. *Chambers* v. *State* (1966), 247 Ind. 445, 215 N. E. 2d 544; *Matthews* v. *State* (1959), 239 Ind. 252, 156 N. E. 2d 387.

Specification #8 of appellant's motion for new trial is not well taken. Appellant complains therein that the trial court abused its discretion in permitting Police Sergeant Lund to remain in the courtroom after previously granting a motion for separation of witnesses. This argument centers upon an area which is solely within the discretion of the trial court, and upon the facts of this case as presented, we cannot say that the trial court committed manifest error in this regard so that appellant was prevented from having a fair trial. *Wathen* v. *State* (1965), 246 Ind. 245, 201 N. E. 2d 692; *Butler* v. *State* (1950), 229 Ind. 241, 97 N. E. 2d 492.

Specification #9 presents the argument that the trial court erred in permitting the case to go to the jury at the conclusion of all the evidence over the objection of appellant's counsel. Such a determinaion also rests solely within the discretion of the trial court, and we find no evidence of an abuse of discretion in this regard.

We have given appellant's Specification #11 careful consideration in view of the allegations contained therein. Appellant alleges that he was not accorded his constitutional privilege against self-incrimination in that the State's evidence against him was, at least in part, based upon the results of an extra-judicial, pre-trial interrogation wherein he was not fully advised of, nor did he waive, his several constitutional rights. However, in the argument section of his brief, appellant cites no transcript page nor line therein where such evidence is set forth. He fails to show the content of any damaging statements, if any, made by him to the police officers during the course of said interrogation, and wholly fails to set out at what point during the course of the trial such statements were used by the prosecution which inured to his detriment. Appellant, therefore, has waived the alleged error. *State* v. *Lenox* (1968), 250 Ind. 482, 237 N. E. 2d 248.

We have given consideration to Specifications #3 through #7 of appellant's motion for new trial, the same relating to ap-

pellant's tendered instruction #1, 2, 3, 4 and 5. Appellant's tendered instruction #1 reads as follows:

"The Court instructs the jury that in determining whether or not the defendant has been identified as the person who committed the offense charged against him, if any such offense was committed, you must consider all the testimony in the case, both that for the prosecution and that for the defendant, considering the means of identification; the circumstances under which he was identified; the opportunity for identifying the said defendant; the influence or suggestion brought to bear on person claiming to identify defendant; the consistency or inconsistency of any or all of the means of identification; the probability or improbability that there was sufficient light at any time to be able to identify the defendant, and, if after so judging and weighing the testimony you are not satisfied beyond all reasonable doubt that the defendant has been correctly identified as the person who committed the offense as charged in this indictment it will be your duty to find the defendant not guilty."

The court did not err in refusing appellant's tendered instruction #1 since the subject matter, i.e. weight and credibility was covered in the court's preliminary instruction #19. Requested instructions which are substantially covered in another or other instructions are properly refused. *Lambert v. State* (1969), 252 Ind. 441, 249 N. E. 2d 502.

Appellant's tendered instruction #2 reads as follows:

"The Court instructs the Jury that if you believe from the evidence and the circumstances proved that there is reasonable doubt whether the witness Donna Barton is mistaken as to the defendant's identity, then you would not be authorized to convict the defendant."

Said instruction was properly refused because it assumes that the "evidence and circumstances proved * * *." It invades the province of the jury and is erroneous. The instruction authorizes acquittal even though the jury might believe the testimony of the other identification witness, Robert Frye. Further, an instruction applicable to one particular witness

is improper. *Gayer* v. *State* (1965), 247 Ind. 113, 210 N. E. 2d 852.

Appellant's instruction #3 was properly refused since it was not supported by the evidence.

Appellants tendered instruction #4 was properly refused since it was also an instruction applicable to the testimony of only one particular witness, and for the further reason that the subject matter contained therein was covered in the court's preliminary instruction #19.

The court's instruction #33¾ was properly given. It merely substituted language similar to appellant's tendered instruction #5. The text of appellant's instruction #5, including the interlineations and additional words appear as follows:

"The Court instructs the Jury that the defense may prove the expectation of gain of any witness for the prosecution, whether founded upon any agreement with the prosecution or not, under which said witness for the prosecution testified, and if the defense has made a showing that there is such expectation of gain, the testimony of such witness for the prosecution should be ~~received with great caution~~ carefully scrutinized."

Specification #12 of the motion for new trial relates only to the sufficiency of the evidence. We have stated many times that when the question of the sufficiency of the evidence is raised on appeal we will consider only that evidence most favorable to the State together with all reasonable and logical inferences that may be drawn therefrom. *Buckner* v. *State* (1969), 252 Ind. 379, 248 N. E. 2d 348; *Sampson* v. *State* (1968), 250 Ind. 625, 237 N. E. 2d 254. We feel the evidence presented to the trial court is clearly sufficient to sustain appellant's conviction.

With regard to Specification #13 of appellant's motion for new trial, we feel that the verdict of the jury finding appellant guilty of the crime of rape is amply sustained by the evidence and is not, therefore, contrary to law.

Appellant's Specification #10, i.e. that the trial court erred in failing to arrest the judgment as to Count One of the

indictment *on its own motion* when it became apparent that such offense was not within the jurisdiction of the court, cannot now be considered by this Court for the reason that appellant failed to argue said specification of error in his brief before this Court. In *Krivanek* v. *State* (1969), 252 Ind. 277, 247 N. E. 2d 505, we stated that:

> "It is a long-standing rule that, on appeal, it is incumbent upon the appellant to affirmatively show harmful error by both argument and citation of authorities, and failure to do so results in waiver of the alleged errors."

Finally, appellant argues that the verdict of the jury finding him guilty of the crime of kidnapping is contrary to law for the reason that the alleged kidnapping in the case at bar was an integral part of the crime of rape. This contention appears in appellant's "Motion in Arrest of Judgment or, In the Alternative, Motion to Amend the Verdict."

The record herein discloses that the jury returned its verdict of guilty on both counts of the indictment on January 31, 1969, and that appellant was sentenced on February 14, 1969. Appellant's motion in arrest of judgment was filed February 28, 1969. There is sufficient case law in Indiana to support the proposition that a motion in arrest of judgment filed after the judgment has been rendered has not been timely filed and presents no question on appeal. *Vanvactor* v. *State* (1965), 247 Ind. 288, 215 N. E. 2d 196; *Anderson* v. *State* (1950), 228 Ind. 491, 93 N. E. 2d 201; *Stapert* v. *State* (1924), 195 Ind. 338, 143 N. E. 587; *Patton* v. *State* (1922), 192 Ind. 632, 135 N. E. 795. Were we to follow this line of authority, we would necessarily be required to hold that inasmuch as the issue was not raised before the trial court in any manner other than the motion in arrest of judgment, such issue cannot now be considered by this Court for the first time on appeal. *Chambers* v. *State, supra; Matthews* v. *State, supra.*

Burns Ann. Stat. § 9-2001 (1956 Repl.) contains the following language:

"A motion in arrest of judgment is an application in writing, on the part of the defendant, asking that no judgment be rendered on a plea, finding or verdict of guilty, and may be granted by the court for either of the following causes:

First. That the grand jury which found the indictment had no legal authority to inquire into the offense charged, for the reason that such offense was not within the jurisdiction of the court.

Second. That the facts stated in the indictment or affidavit do not constitute a public offense.

The court may also, on its view of any of these defects, arrest the judgment without motion.

The effect of allowing a motion in arrest of judgment is to place the defendant in the same situation in which he was before the indictment was found or the affidavit filed, except in cases otherwise provided for: *Provided, That such motion in arrest of judgment may be filed either before or after the motion for new trial,* and the filing of such motion shall not preclude the right of the defendant to subsequently file a motion for a new trial." (Emphasis supplied)

Such language would seem to suggest that since a motion for new trial may be filed subsequent to the judgment, so may a motion in arrest of judgment. However, we note that the proviso contained in Burns § 9-2001, *supra,* was added by amendment in 1925 after our decisions in *Stapert* and *Patton, supra.* Since that time this Court has rendered decisions which have consistently followed the "pre-1925" law on this subject, *Vanvactor* v. *State, supra, Anderson* v. *State, supra,* without the aid of a clear legislative mandate as to precisely what the proper procedure should be. Numerous sessions of the Legislature have been held since our decisions in *Anderson* and *Vanvactor, supra,* and nothing has been enacted which would require a result different from that reached therein with respect to motions in arrest of judgment. It may, therefore, be justly claimed that the Legislature has, for a series of years, acquiesced in the conclusions previously reached and that a fair case for the application of the doctrine of *stare decisis* has been presented.

We hold that a motion in arrest of judgment *must* be filed *before* the entry of the judgment in order to present any question on appeal, and since appellant's motion in the case at bar was not timely filed, the arguments presented solely therein cannot be considered by this Court for the first time on appeal.

The judgment of the trial court is affirmed.

Hunter, C.J., and Givan, J., concur. Arterburn and DeBruler, JJ., concur in result.

NOTE.—Reported in 261 N. E. 2d 364.