**Dennis RUGGIERI, Appellant–
Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 71A03–0304–CR–147.

Court of Appeals of Indiana.

March 16, 2004.

Gregory Paul Kauffman, South Bend, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Andrew A. Kobe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Dennis Ruggieri (Ruggieri), appeals his conviction for Count III, battery, a Class A misdemean-

or, Ind.Code § 35–42–2–1, and Count IV, criminal recklessness, a Class B misdemeanor, I.C. § 35–42–2–2(b).

We affirm.

### ISSUES

Ruggieri raises two issues on appeal, which we restate as follows:

1. Whether the trial court's comments during the trial constituted fundamental error and violated Ruggieri's due process rights; and

2. Whether the trial court abused its discretion by imposing the maximum sentence for misdemeanor charges.

### FACTS AND PROCEDURAL HISTORY

On December 7, 1999, Michael Duncan (Michael) returned home around 10:30 p.m. from his job at Papa John's Pizza. Shortly thereafter, Michael became embroiled in a verbal confrontation with Ruggieri, who is Michael's stepfather. However, while they were in the kitchen the confrontation turned physical. Ruggieri grabbed Michael, shoved him against the cabinets, and threw him on the floor. When Ruggieri was on top of Michael, he removed the lit cigarette from his mouth and placed it very close to Michael's eye. Michael suffered bruising, and had marks on his neck from Ruggieri's elbow. Eddie Zalas (Zalas), a friend living at the residence, and A.D., Michael's younger brother, intervened to prevent further injury. A.D. accompanied Michael upstairs, while Ruggieri remained in the den with Zalas.

A short while later, Michael returned downstairs and confronted Ruggieri in the den, resulting in a computer being knocked over. Eventually, Ruggieri left the house. After calling his mother at work, Michael called the South Bend Police Department. When Ruggieri returned to the house around 2:00 a.m., he was arrested by the police.

On December 8, 1999, the State filed an information with the St. Joseph Superior Court, charging Ruggieri with attempted battery, a Class C felony, I.C. § 35–41–5–1, § 35–42–2–1. On January 13, 2000, the State amended the information, adding Count II, intimidation, a Class D felony, I.C. § 35–45–2–1(a)(2); Count III, battery, a Class A misdemeanor, I.C. § 35–42–2–1; and Count IV, criminal recklessness, a Class B misdemeanor, I.C. § 35–42–2–2(b).

On June 29, 2000, the parties filed a plea agreement with the trial court. Pursuant to the plea agreement, Ruggieri would plead guilty to Count II, intimidation, with the remaining charges being dropped. At the sentencing hearing of August 17, 2000, after Ruggieri denied culpability, the trial court rejected the plea agreement and set the matter for trial. On June 19 through June 20, 2002, a jury trial was held. At the end of the trial, the jury returned a guilty verdict on Count III, battery and Count IV, criminal recklessness. The jury acquitted Ruggieri on Count I, attempted battery, but could not reach a decision on Count II, intimidation.

On July 15, 2002, Ruggieri failed to appear for his sentencing hearing, and as a result, a bench warrant was issued for his arrest. On February 11, 2003, Ruggieri was taken into custody and a sentencing hearing was set for March 20, 2003. On that date, the trial court sentenced Ruggieri to the Indiana Department of Correction for one year incarceration on Count III, battery, and six months incarceration on Count IV, criminal recklessness, with the sentences to run consecutively.

Ruggieri now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Trial Court's Comments

■■■ First, Ruggieri claims · that the trial court's comments during the trial constituted fundamental error and violated his due process rights. Specifically, he alleges that the trial court's continued interruptions wrongfully influenced the jury. Conversely, the State argues that the trial court's comments were part of admonishing the jury, responding to objections, clarifying testimony, and attempting to bring levity to the proceedings. Consequently, the State maintains that none of these comments crossed the barrier of impartiality.

■■■ It is well established that a trial before an impartial judge is an essential element of due process. *Abernathy v. State*, 524 N.E.2d 12, 13 (Ind.1988). The impartiality of a trial judge is especially important due to the great respect that a jury accords the trial judge and the added significance that a jury might give to any showing of partiality by the trial judge. *Id.* To assess whether the trial judge has crossed the barrier of impartiality, we examine both the trial judge's actions and demeanor. *Timberlake v. State*, 690 N.E.2d 243, 256 (Ind.1997), *cert. denied.* However, we are mindful that the trial judge must be given latitude to run the courtroom and maintain discipline and control of the trial. *Id.*

■■■ Ruggieri now contends that the trial court's frequent comments, which were made in the presence of the jury, prejudiced his rights. However, our review of the record shows that Ruggieri did not object to the trial court's interruptions at trial, nor did he move for a mistrial. Generally, a contemporaneous objection is required to preserve an issue for appeal. *See Anderson v. State*, 653 N.E.2d 1048, 1051 (Ind.Ct.App.1995). Seeking to avoid

procedural default, Ruggieri urges that his claim is not foreclosed because the trial court's comments constituted fundamental error. *See Kennedy v. State*, 258 Ind. 211, 280 N.E.2d 611, 620–21 (1972). We acknowledge that this court has on rare occasions determined that the comments of a judge constitute fundamental error. These cases do not, however, establish as a rule that any improper comment by a trial judge will constitute fundamental error and thereby avoid the need for contemporaneous objections. *See Mitchell v. State*, 726 N.E.2d 1228, 1235–36 (Ind.2000), *reh'g denied.*

■■■ Rather, the fundamental error doctrine is extremely narrow. To qualify as fundamental error, "an error must be so prejudicial to the rights of the defendant as to make a fair trial impossible." *Willey v. State*, 712 N.E.2d 434, 444–45 (Ind. 1999). To be fundamental error, the error "must constitute a blatant violation of basic principles, the harm, or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process." *Wilson v. State*, 514 N.E.2d 282, 284 (Ind.1987).

Ruggieri's first allegation of judicial misconduct stems from the trial judge's comments following opening arguments. Specifically, Ruggieri alleges that the trial court's statement made his opening argument meaningless and skewed the jury's perception of his defense. Our review of the record reveals that during his opening statement, Ruggieri's counsel alluded to a statement given by A.D., a State's witness, to Ruggieri's former counsel. At the end of Ruggieri's opening statement, the State informed the trial court that Ruggieri had never mentioned this statement before, nor had its contents been divulged. The State argued that the comment left an improper impression with the jury, and consequently requested the trial court for

an admonishment. The trial court concluded the rather lengthy admonishment by stating:

> So I think really what's going to count here—what really counts here is what are witnesses going to say, what is the evidence going to be. That's all that we have to worry about. Okay?
>
> And in saying this, I am trying to help you to see that neither attorney here has done anything wrong at all. They are both very good attorneys. They have made their presentations to you in very good faith. It is simply that there was a bit of a mixup by a prior attorney or attorneys. It's not their fault, and it has nothing to do with this anyway. So we're going to get to the evidence. How about that? All in favor? Okay. There you go.

(Transcript p. 55).

We have previously held that a proper admonishment to the jury is presumed to cure any alleged error, unless the contrary is shown. *See Hackney v. State,* 649 N.E.2d 690, 694 (Ind.Ct.App.1995). In the present case, Ruggieri failed to demonstrate that the trial court's admonishment influenced the jury's decision. *See id.* Further, we agree with the State that the trial court's comments were not partial to either side and therefore, did not cross the impartiality barrier.

Next, Ruggieri objects to the trial court's *sua sponte* intervention during his cross-examination of Michael. During cross-examination, the following colloquy took place:

> [DEFENSE COUNSEL]: Okay. And this knocking over the computer, that was an accident?
>
> [MICHAEL]: As far as I know.

> * * *
>
> [DEFENSE COUNSEL]: So, you didn't just boot it?
>
> [MICHAEL]: No.
>
> [TRIAL COURT]: You know, that is a terrible word to use with a computer. Because I don't know a darn thing about computers, but the one thing I know is when you turn them on, you've got to boot them up. So you really ought to use a different word, really you ought to.

(Tr. p. 85). A similar intervention took place during defense counsel's cross-examination of Zalas.

In *Hackney,* we stated that a trial judge may, in his discretion, intervene in the fact-finding process to promote clarity. *See id.* at 693. This is exactly what happened in the instant case. The trial judge attempted to diminish the jury's possible confusion by requesting defense counsel to refrain from using a term generally related to the computer industry. Therefore, we find that Ruggieri failed to show how this intervention prejudiced his rights.

Thirdly, Ruggieri draws our attention to the introduction of A.D. as the State's witness. At the request of the State to introduce himself, A.D. stated to both the trial judge and jury in turn, "[m]y name is [A.D.]" (Tr. p. 88). The judge, *sua sponte,* commented "[n]ow there is a literal witness. He introduced himself to the jury and to the court." (Tr. p. 88). Our review of the record reveals that A.D., at the time of his testimony, was sixteen years old. We construe the trial court's remark as nothing more than a good-natured comment to put a young witness at ease. As such, we disagree with Ruggieri, and do not find any partiality on the part of the trial court. At most, the trial court attempted to insert some levity in the proceedings.

Ruggieri's next objection relates to A.D.'s cross-examination. During defense counsel's cross-examination of A.D., the following colloquy took place:

[DEFENSE COUNSEL]: When you saw them in the kitchen, your testimony was that they were both acting inappropriately; is that correct?

[A.D.]: Yes.

[DEFENSE COUNSEL]: And that's because—

[PROSECUTOR]: Objection. I don't believe that's the word he used.

[TRIAL COURT]: Actually it was the word he used because I was rather interested in it. Because inappropriate is a word that is often used these days by people to fit all manner of things. But maybe it's inappropriate of me—

[PROSECUTOR]: Excuse me, I withdraw my objection.

[DEFENSE COUNSEL]: And that was because at least in part what you saw was that Michael also had [Ruggieri] by the hair; is that correct?

(Tr. p. 96–7). Here, the trial court's comment was clearly directed at clarifying a witness' testimony. As we held above, a trial court may, in its discretion, intervene in the fact-finding process to promote clarity. *See Hackney,* 649 N.E.2d at 693. Furthermore, the transcript establishes that, because the State objected to the use of the word "inappropriate," the trial court intervened. (Tr. p. 96–7) A further reading of the record reveals that Ruggieri's counsel had ample opportunity to explore the meaning of the word. Thus, we find that the trial court did not breach the barrier of impartiality.

■ Ruggieri's final allegation of judicial misconduct stems from the trial court's *sua sponte* comment during the testimony of South Bend Police Officer James Turnbo (Officer Turnbo). During defense counsel's cross-examination of Officer Turnbo, the following exchange occurred:

[DEFENSE COUNSEL]: Okay. Now, you have these photographs of this scratch mark and on this other of some sort of mark. The photographs you took of his red neck—did you take photographs of the injuries to his neck.

[OFFICER TURNBO]: No, I did not.

[DEFENSE COUNSEL]: Did you see injuries to his neck?

[OFFICER TURNBO]: No.

[DEFENSE COUNSEL]: You didn't see any redness?

[OFFICER TURNBO]: No.

[DEFENSE COUNSEL]: You didn't see the kind of mark that you might get from somebody choking to the point where a person can't breathe?

[OFFICER TURNBO]: There was a slight mark, but it wouldn't have been picked up by a Polaroid picture.

[DEFENSE COUNSEL]: Oh, so you saw a mark now?

[OFFICER TURNBO]: Yes.

[DEFENSE COUNSEL]: Okay. But you didn't take a picture?

[TRIAL COURT]: No, he saw a mark then.

[DEFENSE COUNSEL]: You saw a mark then, but you didn't take a picture of that?

[OFFICER TURNBO]: Yes.

(Tr. p. 190–91). We have previously held that the trial court has a duty to conduct the trial in a manner calculated to promote the ascertainment of truth, fairness, and economy of time. *See Rowe v. State,* 539 N.E.2d 474, 476 (Ind.1989). Moreover, "even where the trial court's remarks display a degree of impatience, if in the context of a particular trial they do not impart an appearance of partiality, they may be permissible to promote an orderly progres-

sion of events at trial." *Marcum v. State,* 725 N.E.2d 852, 856 (Ind.2000) (quoting *Rowe v. State,* 539 N.E.2d 474, 476 (Ind. 1989)), *reh'g denied.*

In the instant case, we find that the trial court's comment arose from his impatience with defense counsel's line of questioning. In light of trial proceedings and economy of time, the trial court aided defense counsel in clarifying Officer Turnbo's testimony. Therefore, while the trial court may have let its frustration get the better of him, we do not believe that his action or demeanor crossed the bounds of impartiality.

In sum, we find nothing in the record that placed Ruggieri in any type of peril or prejudiced his rights. *See Willey,* 712 N.E.2d at 444–45. The trial court's remarks were directed at admonishing the jury, clarifying the issues, and ensuring timely proceedings. Furthermore, we conclude that Ruggieri failed to demonstrate any prejudice to his rights. As a result, we hold that at no time did the trial court transgress the borders of impartiality. *See Timberlake,* 690 N.E.2d at 256. Consequently, after reviewing the trial court's comments, we decline to permit Ruggieri to avoid procedural default upon his claim of fundamental error. See *Wilson,* 514 N.E.2d at 284.

### II. Sentencing [1]

■ Next, Ruggieri contends that his eighteen month sentence is inappropriate. Specifically, Ruggieri argues that the trial court failed to consider Ruggieri's reasoning for absconding the trial court's jurisdiction as a mitigating factor. He asserts that he remained in California to care for his fiancée who was diagnosed with cervical cancer. As a result, Ruggieri maintains that his sentence was excessive.

Conversely, the State alleges that the sentence was appropriate in light of the nature of the offense and character of the offender. We find both Ruggieri's and the State's arguments misplaced.

■ Traditionally, sentencing lies within the discretion of the trial court. *Powell v. State,* 751 N.E.2d 311, 314 (Ind. Ct.App.2001). Sentencing decisions are reviewed only for an abuse of discretion. *Id.* In *Rodriguez v. State,* 785 N.E.2d 1169 (Ind.Ct.App.2003), this court held that when considering the appropriateness of the sentence for the crime committed, courts should initially focus upon the presumptive penalties. *Id.* at 1179. Trial courts may then consider deviation from this presumptive sentence based upon a balancing of factors, which must be considered pursuant to I.C. § 35–38–1–7.1(a), together with any discretionary aggravating and mitigating factors found to exist. *Id.* In addition to reviewing the traditional balancing of aggravating and mitigating factors, we further review the sentence to ensure that it is proportionate in light of the nature of the offense and character of the offender. *See* Ind. Appellate Rule 7(B).

■ However, in the instant case, Ruggieri was convicted of battery, a Class A misdemeanor and criminal recklessness, a Class B misdemeanor. "A person who commits a Class A misdemeanor shall be imprisoned for a fixed term of not more than one (1) year …", whereas, "[a] person who commits a Class B misdemeanor shall be imprisoned for a fixed term of not more than one hundred eighty (180) days …" I.C. § 35–50–2–3; § 35–50–3–3. Thus, under the statute, misdemeanor charges—unlike felony charges—do not carry a presumptive sentence, only a maxi-

---

**1.** We note that although Ruggieri refers to the now defunct "manifest unjust and unreason-

able standard," we will review his claim based under the current sentencing standard.

mum sentence. Consequently, we cannot consider mitigating and aggravating factors which are used to decrease or enhance a presumptive sentence. Accordingly, in reviewing the appropriateness of a sentence for misdemeanor charges only, we have to employ an abuse of discretion standard. *See Powell,* 751 N.E.2d at 314. As a result, we will reverse the trial court's sentence for misdemeanor charges if the trial court abused its discretion. *See id.*

Based upon the evidence before us, we do not find that the trial court abused its discretion. The record shows that Ruggieri has a prior criminal record for battery and invasion of privacy. He further absconded the trial court's jurisdiction for more than five months prior to sentencing in the instant case. Moreover, Ruggieri committed these crimes against his stepson Michael while Michael's younger brother was present. The record further reveals that Michael received physical injuries from the assault, and a lit cigarette was held close to his eye. Additionally, it is apparent that Ruggieri committed these crimes while he was in a position of trust. Based on all these factors, we find that the trial court properly sentenced Ruggieri, and therefore did not commit an abuse of discretion. *See id.*

### CONCLUSION

Based on the foregoing, we conclude that the trial court's comments during trial did not constitute fundamental error. We further hold that the trial court did not abuse its discretion in imposing the maximum sentence for misdemeanor charges.

Affirmed.

DARDEN, J., and BAILEY, J., concur.