**Mark L. SANDIFUR, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 79A04–0403–CR–169.

Court of Appeals of Indiana.

Oct. 13, 2004.

1044

Michael B. Troemel, Lafayette, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Mark L. Sandifur appeals his conviction for Dealing in a Schedule II Controlled Substance, as a Class B Felony, following a jury trial, and presents the following issues for our review:

1. Whether the trial court committed fundamental error when it admitted into evidence Sandifur's audiotaped statement to police, which contained references to a proposed polygraph examination.

2. Whether the trial court abused its discretion under Indiana Evidence Rule 403 when it allowed evidence that the person to whom he had given drugs had died from a drug overdose.

We affirm.

### FACTS AND PROCEDURAL HISTORY

Trisha Gochenour lived alone with her daughter ("Granddaughter"). Gochenour's mother ("Grandmother") would drive to Gochenour's home each morning to pick up Granddaughter for daycare, and she returned Granddaughter to Gochenour's home each evening. Early in the morning on January 9, 2003, Grandmother arrived at Gochenour's home, but received no answer when she knocked on the door. Grandmother entered the home and found Gochenour in the bedroom. Gochenour's body was cold, and she was unresponsive. Soon thereafter, paramedics arrived, and they rushed Gochenour to the hospital. Gochenour was later pronounced dead.

Dr. Stephen Radentz, a medical examiner with the Forensic Pathology Division of the Indiana University School of Medicine, conducted an autopsy on Gochenour and determined that the cause of death was multiple drug intoxication. Specifically, Gochenour's system contained toxic levels of methadone, a synthetic painkiller similar to morphine, and venlafaxine, an antidepressant similar to Prozac. Although Gochenour had a valid prescription for venlafaxine, she did not have a prescription for methadone.

On the day of Gochenour's death, Tippecanoe County Sheriff's Deputy Joe Conn learned from Grandmother that Sandifur had been with Gochenour all day on January 8. Deputy Conn believed that Sandifur was the last adult to see Gochenour alive. Consequently, Deputy Conn asked Sandifur to come to the police station to answer questions, and Sandifur agreed. During the interview, the deputy confirmed that Sandifur had spent January 8 with Gochenour and had remained at her home until nearly midnight.

Deputy Conn interviewed Sandifur on three separate occasions. The third interview occurred after Deputy Conn had received the medical examiner's toxicology report and knew that Gochenour's blood contained high levels of methadone at the time of her death. During that audiotaped interview, Sandifur confirmed that he had been given a prescription for methadone because of pain from a degenerative back condition, but he denied ever giving any methadone to Gochenour. Deputy Conn then told Sandifur, "There's only one person that she knows that was using methadone ... and that's you." Appellant's App. at 136. Next, Deputy Conn asked, "You're gonna swear on a stack of Bibles that ... you didn't give her any pills? ... And you're gonna take a polygraph for me, aren't you?" *Id.* at 138. Sandifur then admitted that he had given Gochenour methadone in the past, but still denied giving her methadone on January 8. Deputy Conn then stated, "Yeah. We know you did. Okay? You're gonna blast the polygraph and then I'm gonna think you're trying to hide something from me. And I don't want to think that." *Id.* at 140. Sandifur then confessed that he had given Gochenour three or four methadone tablets on January 8.

Thereafter, the State charged Sandifur with dealing in a schedule II controlled substance. Sandifur filed a motion to suppress the statements he had made to Deputy Conn on grounds that his statements were involuntary, that Deputy Conn had misrepresented the facts, and that the statements were made after Deputy Conn had promised leniency or immunity from prosecution. Overall, Sandifur argued that his statements were elicited in violation of his federal and state constitutional rights. The trial court denied the motion. On the day of his trial, Sandifur filed a motion in limine challenging the admission of any evidence concerning Gochenour's

death, including the autopsy report. Sandifur argued that only the toxicology report, which showed that Gochenour had methadone in her system but which was part of the autopsy report, should be admitted. The trial court also denied that motion.

At trial, Sandifur renewed his objections to the admission of his statements to police, as well as his objection to any evidence of Gochenour's death. The jury found Sandifur guilty as charged. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Admissibility of Statement

 Sandifur contends that the trial court abused its discretion when it allowed the jury to hear evidence of a proposed polygraph examination. Specifically, he contends that Deputy Conn's mention of a polygraph during the audiotaped statement led the jury to believe that Sandifur had either refused or failed a polygraph examination, which "placed [him] in a position of grave peril from which he could not recover." Brief of Appellant at 7. The State contends that Sandifur has waived his argument regarding his statement because he objected on other grounds to the admission of the statement at trial. The State also asserts that Sandifur has not shown that admission of the statement rises to the level of fundamental error. We agree with the State.

 It is well-settled law in Indiana that a defendant may not argue one ground for objection at trial and then raise new grounds on appeal. *Hobson v. State,* 795 N.E.2d 1118, 1123 (Ind.Ct.App.2003), *trans. denied.* Timely objection should be made to any improprieties that may occur during the course of a trial so that the trial judge may be informed and may take ef-

fective action to remedy the error or grievance complained of. *Haycraft v. State*, 760 N.E.2d 203, 209 (Ind.Ct.App.2001), *trans. denied.* Although Sandifur objected to the admission of his audiotaped statement at trial, he did so on other grounds. In particular, Sandifur claimed that all three of his statements should be excluded because: his statements were involuntary; Deputy Conn had misrepresented the facts; and he made the statements after the police had promised him leniency or immunity from prosecution. Sandifur did not argue to the trial court that his third statement to Deputy Conn should be excluded because it contained references to a proposed polygraph examination. Thus, Sandifur did not properly preserve that argument and has waived it for purposes of his appeal.[1]

▇ In order to avoid waiver, Sandifur suggests that the trial court committed fundamental error when it allowed the jury to hear the audiotaped references to a polygraph examination. "[T]he fundamental error doctrine is extremely narrow." *Ruggieri v. State*, 804 N.E.2d 859, 863 (Ind.Ct.App.2004). To qualify as fundamental error, an error must be so prejudicial to the rights of the defendant as to make a fair trial impossible. *Id.* Further, the error must constitute a blatant violation of basic principles, the harm, or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process. *Id.*

▇ The law in Indiana is well settled that the results of a polygraph examination, or the offer or refusal to take a polygraph examination, are not admissible in a criminal prosecution absent waiver or stipulation by the parties. *Houchen v. State*, 632 N.E.2d 791, 793 (Ind.Ct.App.

1994) (citing *Goolsby v. State*, 517 N.E.2d 54, 57 (Ind.1987)). However, the admission of such evidence does not necessarily amount to fundamental error. *See id.* at 794 (stating improper admission of polygraph evidence does not always require mistrial). In support of his assertion that fundamental error occurred at his trial, Sandifur relies solely on our decision in *Houchen.* In that case, a police detective and a social worker testified that Houchen had confessed to the crime of child molesting. However, the supposed confession was not recorded, and Houchen denied that he had ever confessed to the crime. *Id.* at 792. As such, the jury had to determine whether to believe Houchen or those witnesses who claimed he had confessed.

At trial, one of the State's witnesses, Detective Toney, twice deliberately introduced evidence that he had offered Houchen a polygraph examination. After the detective's second reference to the polygraph, Houchen's counsel moved for a mistrial, which the trial court denied. *Id.* at 793. Houchen argued on appeal that the detective's statements that he had offered a polygraph amounted to fundamental error, and we agreed. *Id.* Specifically, we stated in relevant part that:

> The improper admission of polygraph evidence does not always require a mistrial. However, given the facts in this case, no remedy short of a mistrial could cure the damage. Upon hearing Toney testify he offered Houchen a polygraph, the jury had to assume one of two things: either Houchen took the test and failed it or he refused to take the test because he was being untruthful. Either way, his credibility, which was crucial to his defense, was severely dam-

---

1. At trial, Sandifur's counsel preserved for appeal the argument that in obtaining his three statements, Deputy Conn violated Sandifur's federal and state constitutional rights. But Sandifur's appellate counsel did not raise any of those arguments on appeal.

aged.... Toney indelibly etched in the minds of the jurors that if Houchen were telling the truth, he would have taken and passed the polygraph examination.... This court will simply not tolerate such a blatant and deliberate attempt to improperly influence the jury. Because one police officer took it upon himself to guarantee a conviction by tossing out an evidentiary harpoon that the jury could not ignore, the time and expense of this jury trial was for naught. The conviction must be reversed.

(Citation omitted).

We in no way approve of the reference to the polygraph examination in this case. Indeed, as in *Houchen*, it is not uncommon for a police officer's reference to a polygraph examination to result in reversible error. *See, e.g., Baker v. State*, 506 N.E.2d 817, 819 (Ind.1987) (holding trial court erred in denying motion for mistrial where, despite order in limine prohibiting mention of polygraph examination, trained police officer referenced polygraph in response to question concerning his general investigation). Nevertheless, *Houchen* is not dispositive. In that case, the issue of whether the defendant had confessed to the crime was in dispute and, thus, the detective's deliberate and repeated statement that he had offered the defendant a polygraph examination resulted in the impermissible inference that the defendant was not being truthful when he testified at trial. Here, however, there was no dispute regarding whether Sandifur had confessed to giving Gochenour methadone pills. Indeed, unlike in *Houchen*, the jury heard the audiotape of Sandifur's confession.

Further, Deputy Conn's statements on the audiotape in which he offered Sandifur a polygraph examination do not have the same prejudicial effect as the detective's statements in *Houchen*. Specifically, although Deputy Conn's suggestions that Sandifur undergo a polygraph examination might have led to Sandifur's admission that he gave Gochenour methadone pills, the jury could not reasonably infer from Deputy Conn's statements that Sandifur ever took and failed a polygraph examination, or that Sandifur refused to take a polygraph examination because he was lying. Stated differently, unlike in *Houchen*, Deputy Conn's brief references to a possible polygraph examination would not lead to the impermissible inference that Sandifur was being untruthful. Thus, Sandifur's reliance on *Houchen* is misplaced. Additionally, Sandifur has not demonstrated that he was prejudiced by Deputy Conn's brief references to a polygraph examination and, thus, cannot meet the high burden of demonstrating fundamental error. *See Ruggieri*, 804 N.E.2d at 863; *see also Vega v. State*, 656 N.E.2d 497, 500–01 (Ind.Ct.App.1995) (holding defendant could not show prejudice where witness against him disclosed that she had taken polygraph examination and, thus, mistrial was not warranted), *trans. denied.*

### Issue Two: Evidence of Gochenour's Death

Sandifur also contends that the trial court abused its discretion when it allowed the State to present evidence of Gochenour's death, including the autopsy report. Specifically, he asserts that the knowledge that Gochenour had died from a drug overdose inflamed the passions of the jury and that the danger of unfair prejudice outweighed the evidence's probative value. Again, we cannot agree.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Williams v. State*, 741 N.E.2d 1209, 1211 (Ind.2001) (quoting Ind.

Evidence Rule 401). Generally speaking, relevant evidence is admissible, and irrelevant evidence is inadmissible. *Id.* (citing Ind. Evidence Rule 402). However, relevant evidence may nevertheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *Id.* (citing Ind. Evidence Rule 403). A decision concerning relevance and prejudice is within the sound discretion of the trial court, and its decision is afforded a great deal of deference on appeal. *Id.* at 1212. We will only reverse a trial court upon a showing that the trial court manifestly abused its discretion and the defendant was denied a fair trial. *Id.*

 Here, the State contends that evidence of Gochenour's death was not only relevant to the charge filed against Sandifur, but was arguably necessary to the State's case because of the *corpus delicti* rule. Indiana's "*corpus delicti* rule holds that a crime may not be proven based solely on a confession." *Lawson v. State,* 803 N.E.2d 237, 240 (Ind.Ct.App. 2004) (quoting *Malinski v. State,* 794 N.E.2d 1071, 1086 (Ind.2003)), *trans. denied.* The admission of a confession requires some independent evidence of the crime including evidence of the specific kind of injury and evidence that the injury was caused by criminal conduct. *Id.* The purpose of such a requirement is to prevent the admission into evidence of a confession by a defendant to a crime that never occurred. *Shanabarger v. State,* 798 N.E.2d 210, 215 (Ind.Ct.App.2003), *trans. denied.* Here, we agree with the State that evidence that Gochenour had died from a drug overdose provided the necessary evidence, independent of Sandifur's confession, that he had delivered methadone to her. Thus, we conclude that evidence of Gochenour's death, including the autopsy report, were relevant.

 As we have noted, however, even relevant evidence may be excluded if the probative value of the evidence is substantially outweighed by any prejudicial effect it may have on the jury. *See Williams,* 741 N.E.2d at 1211. Our supreme court has held that the "evaluation of whether the exhibit's probative value is substantially outweighed by the danger of unfair prejudice is a discretionary task best performed by the trial court." *Dunlap v. State,* 761 N.E.2d 837, 842 (Ind.2002). Again, we agree with the trial court's statement that "even though [evidence of Gochenour's death] might seem prejudicial, sometimes evidence is prejudicial." Transcript at 62. But the trial court must determine whether the probative value of evidence is substantially outweighed by the danger of *unfair* prejudice, and we afford the trial court discretion in making that determination. *See Willingham v. State,* 794 N.E.2d 1110, 1116 (Ind.Ct.App. 2003) (stating evidence that defendant had sold cocaine week before crime charged was not unfairly prejudicial under Rule 403 balancing test and, thus, trial court did not abuse its discretion when admitted evidence despite defendant's Rule 404(b) objection).

As we have explained, we agree with the State that Gochenour's death was "inextricably bound up" with the charged crime. *See id.* at 1117. And although evidence that Gochenour had died from a drug overdose was prejudicial to Sandifur, we conclude that the trial court did not abuse its discretion when it ruled that the evidence of her death was not substantially outweighed by the danger of unfair prejudice. Moreover, the autopsy report consisted of a professional and non-emotional written description of Gochenour's death. That report contained no photographs of Gochenour, alive or dead. We conclude that the trial court did not abuse its discretion when it allowed the State to admit evi-

dence of Gochenour's death, including the autopsy report.

## CONCLUSION

We conclude that the trial court's decision to admit Sandifur's audiotaped statement containing references to a proposed polygraph examination does not amount to fundamental error. We further conclude that the trial court did not abuse its discretion when it allowed the State to introduce evidence that Gochenour had died from a drug overdose, including the autopsy report, because such evidence was relevant and not unfairly prejudicial.

Affirmed.

SULLIVAN, J., and BARNES, J., concur.