**Joseph STELLWAG, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 18A02–0509–CR–910.

Court of Appeals of Indiana.

Sept. 19, 2006.

L. Ross Rowland, Muncie, IN, Attorney for Appellant.

Stephen R. Carter, Attorney General of Indiana, Deanna L. Brunner, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

BARTEAU, Senior Judge.

*STATEMENT OF THE CASE*

Defendant–Appellant Joseph Stellwag ("Defendant") appeals his conviction after a jury trial of Class C felony battery by means of a deadly weapon. Ind.Code § 35–42–2–1(a)(3).

*FACTS AND PROCEDURAL HISTORY*

Defendant's conviction stemmed from the facts surrounding an altercation on August 3, 2004, between Defendant and Matthew Johnson, the son of Julie Runyon ("Julie"). Julie and Defendant are the parents of a daughter named Cherub, who was seven years old at that time of the incident. For purposes of this appeal, the facts relevant to the issues on appeal occur during the course of the trial, and will be supplied in the appropriate discussion section of this opinion. Defendant's jury trial was held on August 16, 2005.

*DISCUSSION AND DECISION*

I. RIGHT TO TRIAL BEFORE
AN IMPARTIAL JUDGE

Defendant alleges that he was denied the right to a fair trial before an impartial judge. He contends that all of the challenged remarks made throughout his trial cumulatively establish that the trial judge was partial, and that Defendant is entitled to a new trial.

A trial before an impartial judge is an essential element of due process. *Ruggieri v. State*, 804 N.E.2d 859, 863

(Ind.Ct.App.2004). The impartiality of a trial judge is especially important due to the great respect that a jury accords the trial judge and the added significance that a jury might give to any showing of partiality by the trial judge. *Id.* To assess whether the trial judge has crossed the barrier of impartiality, a court on review examines both the trial judge's actions and demeanor. *Id.* However, a trial judge must be given latitude to run the courtroom and maintain discipline and control of the trial. *Id.*

In the present case, Defendant did not object to the trial court's interruptions, nor did he move for a mistrial. In those situations, generally, a contemporaneous objection is required to preserve an issue for appeal. *Id.* Instead, Defendant contends that the trial court's comments collectively constitute fundamental error.

■ A failure to object at trial results in waiver of the issue on appeal. *Decker v. State,* 515 N.E.2d 1129, 1131 (Ind.Ct.App. 1987). However, our supreme court reviewed a claim of improper judicial intervention, declining to apply the waiver doctrine, because of the importance of a fair trial by an impartial judge and jury. *See Kennedy v. State,* 258 Ind. 211, 218, 280 N.E.2d 611, 615 (1972). On rare occasions, the comments of a judge have been found to constitute fundamental error. *See e.g., Kennedy,* 280 N.E.2d at 620–21; *Decker,* 515 N.E.2d at 1131–32. However, not every alleged errant comment made by a trial judge will entitle a defendant to review for fundamental error, thus avoiding the necessity for a contemporaneous objection. *See, Mitchell v. State,* 726 N.E.2d 1228, 1236 (Ind.2000). The proper procedure to be used in such situations where a judge makes an allegedly inappropriate comment is to request an admonishment and, if further relief is necessary, to move for a mistrial. *Id.* at 1235.

We first address the specific allegations made in the argument section of Defendant's brief. The first incident occurred during Julie's testimony. The following exchange occurred in front of the jury.

THE COURT: Mr. Stellwag, come up here.

DEFENDANT: Yes, sir.

THE COURT: Now, I've had it with you. I've just had to admonish your attorney for the faces and the conduct you're having. The things that you just said, "she's lying", I heard it. I'm sure that some of the jury heard it. Now I'm going to take you out of this Courtroom and we'll leave you upstairs in the jail until we have this trial. Do you understand me? One more. And I'll not warn you again. I'll have you taken out. The Sheriff is back there waiting to get you right now. Go sit down and do not do that again. I'm sorry ladies and gentlemen.

MS. CALHOUN: Your Honor, I would ask that the jury be told to disregard anything that Mr. Stellwag has said.

THE COURT: Please, that's my instruction, to you to disregard it. He knows better. I'm not blaming Ross because Ross would not have that happen. He cannot make gestures, he cannot make statements, and so forth, that you can hear. He will have his chance if he wants to testify, but he can't do it roundabout, so that's my ruling and that's the way it's going to be from here on. Okay, proceed.

MS CALHOUN: Thank you, Your Honor.

Tr. at 73. The State's direct examination of Julie proceeded after that exchange.

The next exchange addressed by Defendant in the argument section of his brief occurred during the redirect examination of defense witness Beth Quarles. Quarles

was the executive director of an independent living center named Future Choices, Inc. Quarles testified that she had worked with Defendant regarding obtaining social security benefits. During her testimony, Quarles stated that Julie was a passenger in a vehicle Quarles was driving to a hearing at which she represented Defendant, and that Defendant was also in that vehicle. Julie provided to Quarles a different version of the altercation between Defendant and Julie's son than Julie had provided to the State.

During cross examination, the deputy prosecutor established that Quarles was not a witness to the altercation between the Defendant and Julie's son, Matthew. The State asked Quarles if she had contacted the prosecutor's office to alert them that a witness, Julie, had changed her story. Quarles indicated that she had not. The relevant portion of the record as it pertains to the trial judge's behavior is as follows:

THE STATE: Did you contact the Prosecutor's office to let us know that a witness may have changed her story?

QUARLES: That a witness may have changed my story?

THE STATE: Well, you said that Julie told you that she had lied to the police. You didn't come to the Prosecutor's office, did you?

QUARLES: No.

THE STATE: You didn't come and tell us. You didn't think it was that important, did you?

QUARLES: Actually, what she said was, "I didn't . . ."

THE COURT: The question calls for a yes or no answer.

THE STATE: Did you think it was important enough to come to the Prosecutor's office and tell us that a witness had changed her statement?

QUARLES: No, on December the 13th, I got a summons to come to Court.

THE STATE: Did you come to the Prosecutor's office.

QUARLES: No, I did not.

THE STATE: Did you make any police report or anything based upon your conversation with Julie Runyon supposedly changing her story?

QUARLES: No, because Julie Runyon is not. . . .

THE STATE: Did you make any statements?

QUARLES: No, I did not.

THE COURT: Just answer. Don't argue. Ma'am, you're not here to argue with her.

QUARLES: I said no, I don't. . . .

THE COURT: Answer her questions.

QUARLES: Okay, sir, I'm sorry.

THE COURT: Let's go again.

Tr. at pp. 125–127. Then upon re-direct examination:

DEFENSE COUNSEL: Beth [Quarles], had you seen any statement that Julie had made to the police or the Prosecutor?

QUARLES: No, I did not.

THE COURT: Now wait a minute. Where did that come from?

THE STATE: Objection, Your Honor. I'm sorry. I was writing . . .

THE COURT: Sustained. You can't go back and forth forever. Where did that come up in her examination?

DEFENSE COUNSEL: She asked her if it was important to go to the Prosecutor's office . . .

THE COURT: Yeah, and you asked her had she seen a report that had been made. I sustained her objection. That's not a question that follows what she said.

DEFENSE COUNSEL: The point in the question was that Beth had not seen a statement, so she did not know what Julie had filed.

THE COURT: She was not asked if she had seen a statement. She was asked did she go to the police, did she go to the Prosecutor, or anybody, to make a statement that this woman had changed her account. You're saying did she see a report at the police, did she see a report at the Prosecutor. That wasn't the question. That wasn't what she raised, Ross.

DEFENSE COUNSEL: I thought what she raised was did Beth go to the Prosecutor's office to report to them that . . .

THE COURT: That's what she asked.

DEFENSE COUNSEL: And my point was she had never seen a statement to begin with, so she couldn't . . .

THE COURT: But that isn't—you're going afield from what she asked. She didn't ask about a statement that was made. She asked if she had made and statement and she said no.

DEFENSE COUNSEL: Okay. I have no further questions.

Tr. at pp. 127–129.

Also contained in Defendant's brief, but appearing in the statement of the facts section, is an incident that occurred during cross-examination of Defendant about the existence of a protective order.

THE STATE: If I were to show you a copy that says that you were enjoined from threatening domestic or family violence against the petitioner, which was Julie Runyon, would you agree with that?

DEFENDANT: I'm not really sure. I think . . .

THE STATE: Would you agree with that?

DEFENDANT: Well, they let me come by the house and mow the lawn, so I'm not sure.

THE COURT: No, listen. Listen. Now listen a minute.

[DEFENDANT]: Okay, sir.

THE COURT: You're not just going up here and just talk. You've got to answer the question. That's the way this game is played.

DEFENDANT: Okay, I know there's a protective order.

THE COURT: Now listen to me. She asked you a question. She's asked it of you three times and you've yet to answer it. You started off on "she let me come and mow the yard". That isn't what you were asked. You answer these questions or I'm going to take you off the stand.

[DEFENDANT]: Alright.

THE COURT: Now you make up your mind what you want to do.

THE STATE: I hand you what's been marked as State's Exhibit 3. Can you identify that for me, please? Can you identify that for me, please?

DEFENDANT: Yeah.

THE STATE: And what is that?

DEFENDANT: A protective order.

Tr. at pp. 147–148.

A trial judge must be given latitude to run the courtroom and maintain discipline and control of the trial. *See Timberlake*, 690 N.E.2d at 256. If the trial judge's comments display only a degree of impatience, they may be permissible to promote an orderly progression of events at trial. *Id.* In order to establish the degree of partiality required for reversal, a defendant must show that the trial judge's action and demeanor crossed the barrier of impartiality and prejudiced the defendant's case. *Id.*

Furthermore, a trial judge may within reason question a witness, so long as the questioning is for the purpose of aiding the jury in its fact-finding duties, and is done in a manner so the judge does not improperly influence the jury. *Decker,* 515 N.E.2d at 1134. A judge exceeds the fact-finding role when the judge asks questions calculated to impeach or discredit a witness. *Id.*

In the present case, it is apparent that the cumulative effect of the trial judge's comments crossed the barrier of impartiality. Defendant was called before the judge in front of the jury and was threatened with going to jail if he did not stop whispering to his attorney and making gestures. Immediately prior to that, the trial court had a conversation with Defendant's attorney about Defendant's behavior. The text of that exchange does not appear in the record.

When the Defendant was testifying about his knowledge of the existence of a protective order, the court interrupted and admonished Defendant to answer the State's questions. Defendant then answered that he knew there was a protective order against him in Julie's favor. However, the trial judge continued by telling the Defendant that he had yet to answer the State's question, that the State had asked the question several times. During cross-examination of Quarles, a defense witness, the State asked if she had made any statements to the prosecutor indicating that a witness, Julie, had made a false statement. Quarles stated that she did not. The trial court then intervened and told Quarles not to argue with the deputy prosecutor, but just to answer the question.

Then on re-direct of Quarles, defense counsel attempted to establish that Quarles had not seen Julie's statement to the prosecutor regarding the altercation; therefore, she had no reason to know that Julie's version of the events told to Quarles differed from the statement to the State. The trial court intervened and asked where that line of questioning came from, seemingly indicating that it was outside the scope of cross-examination. The State then objected to defense counsel's questioning.

Furthermore, those incidents likely cumulatively prejudiced Defendant's case. The trial judge could have excused the jury and admonished Defendant to refrain from gesturing and making comments that could be overheard by the jury about the State's witnesses. Admonishment in front of the jury was not a function necessary to controlling the courtroom. Further, the trial court objected to a line of questioning prior to the State's objection. The trial court also gratuitously requested in front of the jury that a defense witness refrain from arguing with the State after the witness had responded in a yes or no fashion to the State's question.

Defendant has established that fundamental error occurred due to the improper intervention of the trial court. Defendant has established that he is entitled to a new trial.

Because of our resolution of this issue, we do not address the sentencing error raised by Defendant.

Reversed and remanded.

BAILEY, J., and CRONE, J., concur.