**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Aug 06 2014, 9:50 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**RUTH JOHNSON**
Marion County Public Defender Agency
Indianapolis, Indiana

**JILL M. ACKLIN**
Acklin Law Office, LLC
Westfield, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**CHRISTINA D. PACE**
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| In the Matter of J.K., A Child In Need of Services, | ) | |
| | ) | |
| M.K., Father, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1312-JC-1008 |
| | ) | |
| MARION COUNTY DEPARTMENT OF CHILD SERVICES, | ) | |
| | ) | |
| Appellee-Petitioner, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CHILD ADVOCATES, INC., | ) | |
| | ) | |
| Co-Appellee (GAL). | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn A. Moores, Judge
Cause No. 49D09-1305-JC-16154

**August 6, 2014**
**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

M.K. ("Father") appeals from the juvenile court's order adjudicating his child, J.K., to be a child in need of services ("CHINS") and contends that he was denied his due process right to a fair hearing because the juvenile court judge made alleged derogatory remarks about the parties.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On May 20, 2013, the Marion County Department of Child Services ("MCDCS") received a report alleging neglect of J.K. The report stated that J.K. lived with her mother, C.K. ("Mother"), at the home of J.K.'s grandmother. J.K., who was seventeen years old at the time, worked at Steak 'n Shake until approximately 9:00 p.m. on the evening of May 16, 2013. J.K. does not usually get home until about 10:30 to 11:30 p.m. because she has to take two buses to get home. When J.K. arrived at Grandmother's home at approximately 11:30 p.m., Grandmother had locked her out of the house and would not answer the door when J.K. banged and kicked at the door. J.K. called Mother, who told J.K. that she would have to sleep outside because Mother was not coming back to the house that night. J.K. eventually called a friend to pick her up. J.K. stated that Grandmother did not want her at the house unless Mother is there. On May 17, 18, and 19, J.K. spoke with Mother, who said she would not be returning to Grandmother's house those days, so J.K. stayed with her friend again those nights. When her friend's mother called Grandmother on May 20, 2013, Grandmother still refused to allow J.K. to come home. MCDCS removed J.K. and placed her in foster care.

After speaking with Mother and Father and determining that neither was willing to cooperate in MCDCS's investigation, MCDCS filed a petition alleging that J.K. was a

2

CHINS.[1]  On August 29, 2013, and October 10, 2013, the juvenile court conducted a fact-finding hearing on the CHINS petition.  At the August 29 hearing, Mother submitted her admission of CHINS and agreement for services.  At the conclusion of the October 10 hearing, Father waived his right to a fact-finding hearing, and the juvenile court issued its order adjudicating J.K. to be a CHINS.  On November 7, 2013, the dispositional hearing was held, and Father failed to appear.  The juvenile court entered its dispositional order, granting wardship of J.K.[2] to MCDCS, ordering placement of J.K. with Mother on a trial home visit, and requiring both Mother and Father to participate in certain reunification services.  Father now appeals.  Additional facts will be added as necessary.

## DISCUSSION AND DECISION

Father argues that the juvenile court judge made "a number of questionable, derogatory comments towards both parents, which call into question the fairness of the proceedings."  *Appellant's Br*. at 8.  However, Father did not object during the hearings to any of the challenged comments.  The fundamental error exception permits an appellate court to review a claim that has been waived by a defendant's failure to raise a contemporaneous objection.  *Benefield v. State*, 945 N.E.2d 791, 801 (Ind. Ct. App. 2011) (citing *Brown v. State,* 929 N.E.2d 204, 207 (Ind. 2010)).  "The fundamental error exception is 'extremely narrow, and applies only when the error constitutes a blatant

---

[1] Mother admitted that J.K. was a CHINS and does not participate in this appeal.  We will, therefore, address facts as to Mother only as necessary to address Father's arguments.

[2] J.K. turned eighteen on April 2, 2014, before the date of filing of Father's appellate brief.  Father contends that this case may, therefore, be moot.  However, Indiana Code section 31-30-2-1(a)(1) states that the juvenile court retains jurisdiction over a child adjudicated to be a CHINS and over the parents of such child until the child becomes twenty-one, unless the court discharges the child and the child's parents at an earlier time.  We, therefore, will reach the merits of this case.

violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process.'" *Id.* (quoting *Mathews v. State,* 849 N.E.2d 578, 587 (Ind. 2006)).

Father contends that certain comments made by the juvenile court during the course of the two-day fact-finding hearing were derogatory toward him and Mother and that such statements called into question the fairness of the CHINS proceedings. He asserts that the comments made by the judge "seriously call[ ]the judge's impartiality into question, which is a risk to [Father's] due process right to a fair tribunal." *Appellant's Br.* at 10. Father further argues that he waived the fact-finding hearing and admitted that J.K. was a CHINS only after the juvenile court made one of the comments.

Due process protections bar state action that deprives a person of life, liberty, or property without a fair proceeding. *In re G.P.*, 4 N.E.3d 1158, 1165 (Ind. 2014). Due process protections at all stages of CHINS proceedings are vital because every CHINS proceeding has the potential to interfere with the rights of parents in the upbringing of their children. *Id.* (citing *S.S. v. Ind. Dep't of Child Servs.,* 962 N.E.2d 1249, 1257 (Ind. 2012)) (quotations omitted). "[P]rocedural irregularities . . . in a CHINS proceeding may be of such import that they deprive a parent of procedural due process with respect to a potential subsequent termination of parental rights." *In re K.D.*, 962 N.E.2d 1249, 1258 (Ind. 2012) (citing *In re J.Q.,* 836 N.E.2d 961, 967 (Ind. Ct. App. 2005)). "It is also a double-edged sword because not only must we ensure parental due process is upheld, but we also acknowledge that 'a primary purpose and function of the [State] is to encourage and support the integrity and stability of an existing family environment and relationship.'" *Id.*

4

(quoting *Jackson v. Madison Cnty. Dep't of Family & Children,* 690 N.E.2d 792, 793 (Ind. Ct. App. 1998), *trans. denied).*

A trial before an impartial judge is an essential element of due process. *Stellwag v. State*, 854 N.E.2d 64, 65 (Ind. Ct. App. 2006) (citing *Ruggieri v. State,* 804 N.E.2d 859, 863 (Ind. Ct. App. 2004)). To assess whether the trial judge has crossed the barrier of impartiality, a court on review examines both the trial judge's actions and demeanor. *Id.* at 66. However, a trial judge must be given latitude to run the courtroom and maintain discipline and control of the trial. *Id.*

On rare occasions, the comments of a judge have been found to constitute fundamental error. *Id. See e.g., Kennedy v. State*, 258 Ind. 211, 226-27, 280 N.E.2d 611, 620-21 (1972); *Decker v. State*, 515 N.E.2d 1129, 1131-32 (Ind. Ct. App. 1987). However, not every alleged errant comment made by a trial judge will entitle a defendant to review for fundamental error, thus avoiding the necessity for a contemporaneous objection. *Stellwag*, 854 N.E.2d at 66.

In the present case, the record shows that Mother and Father were attempting to use the juvenile court as a vehicle to determine custody issues in their dissolution proceedings. Instead of focusing on the needs of J.K., Mother and Father were focusing on their marital disputes and dragging J.K. into the middle. Specifically, after an exchange regarding the fact that when J.K. is staying at Father's he does not allow her to talk to Mother, the juvenile court asked how it was relevant to the CHINS case and wanted to know if Father was going to admit J.K. was a CHINS or proceed with the hearing because the juvenile court was not the proper court to determine the dissolution proceedings. *Tr*. at 8-9. The juvenile court made the following comment:

5

. . . guys this is not what this Court is for. This is not what tax payer's services are for. We have people who are writing their names on children with lit cigarettes. That is what the resources of this Court are for and not because you're living with people she [sic], that have too much drama and you're living with somebody else who creates drama for her in the middle of this and shame on grandmother for locking her out. What kind of crazy person locks a kid out on the streets in this world, in this day and age? It's not like she's out running around, she's working for god sake. Now, this is completely ridiculous and retarded.

*Id.* at 9. The juvenile court then ordered Mother and Father to mediation to attempt to determine where J.K. should live. The juvenile court then stated: "We have crack positive babies, we have mothers who are leaving their children where nobody knows where they are. This is a divorce and it's being poorly handled. Are you guys represented by attorneys in your divorce?" *Id.* at 10. Before a mediation date was set, a further exchange occurred, where Mother discussed the reason why she could not get a place of her own and how she had not received child support for a period of time. *Id.* at 11-13. The court again requested a mediation date be set and further stated:

Give me a mediation date. I'm not . . .I can't make people behave. I can put them in jail if they don't, but I can't make them behave and you guys have baggage here that is not appropriate baggage for our Court. We have real, genuine human problems. The only person in this courtroom who has that is poor [J.K.] who's caught in the middle of your guy's mess. Now. It's a mess and I'm not saying . . . she didn't pick either of you. Okay. All she did is show up on earth and try to be a good kid and not cause any problems and she gets pulled both ways. You have to understand that. It is not fair, it is not right, what's our date.

*Id.* at 14-15.

When read in context of what occurred at the hearing, the juvenile court's statements do not call into question the judge's impartiality or constitute a violation of Father's right to a fair tribunal. The court was attempting to make Mother and Father understand that the juvenile court was not a place for them to argue their dissolution case or air out their

6

domestic relations issues. The court was merely trying to get Mother and Father to recognize that the CHINS proceeding was not the place to use J.K. as a pawn in their domestic relations issues but, instead, was a place to provide J.K. with the services that she needed.

On the second day of the fact-finding hearing, which took place after mediation failed to result in an agreement between Mother and Father, the juvenile court asked J.K. to state her preference for where she wanted to be placed. After J.K. stated what she believed would be best to keep the peace between her parents, the juvenile court stated: "[D]o you hear the wisdom of your daughter, the seventeen year old, that neither of you knuckles head [sic] can get this done, shame on both of you." *Tr.* at 22-23. A discussion then ensued about how J.K. would get to her present high school if she lived with Father, with Father informing the court that he was not able to transport J.K. The juvenile court then told MCDCS to look into whether J.K. could be transported by bus to school from Father's house if J.K. was placed with Father under the CHINS case. As the juvenile court was adjudicating J.K. to be a CHINS, Father informed the court that he did not agree that J.K. was a CHINS. *Id.* at 27. The following exchange then occurred:

| | |
|---|---|
| Father's Attorney: | Your honor, before we get to [sic] far afield, um, Father still avers that [J.K.] is not a [CHINS] based on if he has placement that she doesn't need services. |
| Court: | Well, if that were the case then he'd be able to provide her transportation to school wouldn't he? |
| Father's Attorney: | Not necessarily, your honor. As you said the school system . . . |
| Court: | Hopefully, that's the case. |
| Father's Attorney: | . . . must do that but he doesn't believe . . . |

7

| Court: | Well no, only if she is placed by court order. They won't do it if she, if he just gets custody. They want [won't] do it, that's the reason I'm keeping the case open. If I were you I'd waive fact-finding otherwise you're going to find your butt finding a new job. I'll be happy to give you what you want sir and I will order custody to you and then you will be responsible for ensuring that she gets to school every day. Do you want to do that? We can play that game. They only do it for kids in foster care and in court-ordered placements, they don't do it for others. |
|---|---|
| Father: | That's fine she's . . . |
| Court: | It's 5:30 sir . . . |
| Father: | . . . a [CHINS]. |

*Id*. at 27-28.

Father contends that this exchange made him waive the fact-finding hearing and admit that J.K. was a CHINS. In the exchange, the juvenile court was attempting to inform Father that the school system only arranges transportation from one school district to another when MCDCS, under its *parens patriae* authority, arranges and the court orders it under a CHINS case. *See* Ind. Code § 31-34-15-4(7)(B); Ind. Code § 31-34-20-5. Therefore, in the present case, if there was no CHINS adjudication and involvement, no school transportation could be obtained. Additionally, Father had told the court that he was not able to transport J.K. to her school due to his work, which could make it necessary for him to find a new job if he had custody of J.K. and was responsible for ensuring she was transported to school every day or face further state involvement for failing to address J.K.'s educational needs.

8

Although the juvenile court judge's statements may have been blunt, they were made to make Father aware that, even if J.K. was placed in his care, she was a CHINS because Father was unable to transport her to school and she required services for transportation. The statement did not indicate a bias or prejudice against Father, merely a desire to ensure that J.K. could attend her school. The juvenile court's statement also does not indicate that the court made Father admit that J.K. was a CHINS. Instead, when Father admitted that he could not provide transportation for J.K. to get her to school, this was an implicit admission that J.K. was a CHINS and required court-ordered intervention to be able to have the school system ordered to provide transportation to J.K.'s school. We conclude that no fundamental error occurred in the present case.

Affirmed.

MAY, J., and BAILEY, J., concur.

9