FRANK RANDOLPH *v*. STATE OF INDIANA.

[No. 1277S808. Filed July 24, 1978.]

*Nile Stanton, Stanton Boyle Hyatt & Reuben,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert J. Black,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was convicted in a trial by jury of Kidnapping, Ind. Code § 35-1-55-1 (Burns 1975) ; Rape, Ind. Code § 35-13-4-3 (Burns 1975) ; Commission of a Felony While Armed, to-wit: Rape, Ind. Code § 35-12-1-1 (Burns 1975) Drawing a Deadly Weapon, Ind. Code § 35-1-79-1 (Burns 1975) ; and Carrying a Firearm Without a License, Ind. Code § 35-23-4.1-2 (Burns 1975). He was sentenced to imprisonment for life for kidnapping, to thirty (30) years for commission of a felony while armed, to not less than one (1) nor more than three (3) years for drawing a deadly weapon and to six (6) months for carrying a firearm without a license. All sentences were set to run concurrently. On appeal the defendant raises the following issues:

(1) Whether the trial court erred in reading several instructions to the jury, each of which contained the word "should" instead of the word "must."

(2) Whether the defendant was denied due process of law, by the State's introduction of evidence that the defendant exercised his right to remain silent after his arrest.

(3) Whether the trial court erred in denying the defendant's motion for mistrial, which was based upon the State's questioning of the defendant as to a specific unrelated arrest.

(4) Whether the trial court erred in refusing to declare a mistrial based upon the State's questioning of a defense witness about prior arrests of the defendant.

(5) Whether the cumulative impact of all of the errors amounted to a denial of the defendant's due process rights.

## ISSUE I

As his first assignment of error, the defendant argues that the trial court erred in giving several instructions to the jury containing the word "should" instead of the word "must." The questioned final instructions, Nos. 16, 18, 24, 26, 34, 35 and 38, dealt with the defendant's credibility as a witness, the lesser included of-

fenses of each of the crimes charged and the treatment which should be given to any question to which an objection was made and sustained. On appeal, the defendant contends that the instructions lacked mandatory direction due to the use of the permissible "should." The record fails to disclose however, any objection made at trial to the giving of the instructions alleged as error. Having failed to object to the specific wording at trial, the defendant is precluded from raising the issue on appeal. Ind. R. Crim. P. 8 (B) ; *Loza* v. *State*, (1975) 263 Ind. 124, 325 N.E.2d 173.

## ISSUE II

During the course of the State's direct examination of one of the arresting offcers, the following exchange took place:

"Q. Following the arrest, what, if anything, did you do with the Defendant?

"A. Advised him of his rights.

"Q. Did he make any statement to you?

"A. No. Then I proceeded to take him to the lock-up."

On appeal, the defendant argues that the above constituted an impermissible introduction of the defendant's exercise of his constitutional right to remain silent. *Doyle* v. *Ohio*, (1976) 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91; *Jones* v. *State*, (1976) 265 Ind. 447, 355 N.E.2d 402. Although the defendant concedes that no timely objection was made to the State's question, he argues that the court's failure to cure the error either at the time it occurred or in the final instructions, constituted plain error requiring reversal.

Failure to raise an objection at the trial level will constitute a waiver of the error unless it can be shown that such a waiver would deny the defendant fundamental due process of law. *Malo* v. *State*, (1977) 266 Ind. 157, 361 N.E.2d 1201; *Brown* v. *State*, (1975) 264 Ind. 40, 338 N.E.2d 498. As we stated in *Malo* at p. 1204:

"That the error complained of relates to the violation of a right guaranteed by the constitution does not, in and of itself, render it fundamental error requiring us ▮ to go against well established rules of procedure. Rather, fundamental error is error which, if not rectified, would deny the appellant 'fundamental due process.' "

In the instant case the alleged error does not deny the defendant fundamental due process. The brief exchange between the State and the officer did not directly point out the defendant's invocation of his right to remain silent. There was no attempt made by the State to impeach the defendant with his silence or to force the defendant to explain away his silence. The officer's comment did not reach the level of fundamental error requiring reversal.

## ISSUE III

During direct examination by defense counsel, the defendant was asked the following:

"Q. Now, Mr. Randolph, have you ever been arrested for any criminal charges before?

"A. No.

"Q. This case?

"Mr. Montgomery: I did not hear the question.
"The Court: Would you read it back?
"Reporter: Have you ever been arrested for any criminal charges before this case?

"Mr. Montgomery: What was the answer?

"A. No."

On cross examination, the State asked the following of the defendant:

"Q. Now, didn't you tell Defense Counsel that you'd never before been arrested on criminal charges?

"A. That's right.

* * *

"Q. Isn't it true that on April 19, 1975, you were arrested for Assault and Battery with Intent to Murder?"

On appeal the defendant argues that the above line of questioning was prejudicial to the defendant and that the trial court erred in denying his motion for a mistrial.

On direct examination, defense counsel brought up the issue of the defendant's prior arrests. The defendant argues that the question was phrased by defense counsel so as to exclude any arrests which were made subsequent to the date of the charge on which he was then standing trial. On cross examination, the State sought to question the defendant about an arrest which had occurred a month subsequent to the date of the defendant's arrest on the pending charges. From viewing the record it would appear that the defendant had opened the door for a revelation of any arrests which had occurred prior to the time of the trial. The question on direct examination related to arrests "before," and did not specify a time or event to which it related. At best, the question was ambiguous. Having initially opened the door to an inquiry into his prior arrests, the defendant cannot now be heard to complain of his own act. *Newman* v. *State,* (1970) 254 Ind. 578, 261 N.E.2d 364; *Brower* v. *State,* (1956) 236 Ind. 35, 138 N.E.2d 237.

The question is moot, however, as the defendant's objection was sustained. No answer was given, and the jury was admonished to disregard the question and to refrain from speculating as to the answer. In addition, the trial court included a similar admonishment in the final instructions. Such admonishments are presumed to cure error, unless the contrary is shown. *Carmon* v. *State,* (1976) 265 Ind. 1, 349 N.E.2d 167. The defendant has made no such showing in this case. Trial courts have broad discretion in ruling upon motions for mistrials. Their determinations will be reversed only upon a showing of clear error. *Rufer* v. *State,* (1976) 264 Ind. 258, 342 N.E.2d 856; *Ballard* v. *State,* (1974) 262 Ind. 482, 318 N.E.2d 798.

## ISSUE IV

During the defendant's case in chief, Willie Brock was called to testify as to the defendant's reputation for peacefulness and quietude in the community. On cross examination, the State asked Mr. Brock whether he had heard that the defendant was arrested for assault and battery with intent to murder. The defendant objected upon the grounds that the State was attempting to try the defendant on charges other than those pending before the court. The defendant moved the court to declare a mistrial, which motion was denied.

The defendant concedes in his brief that when a defendant places his reputation for good character in issue, the State is then permitted to impeach that reputation by introducing into evidence specific acts of prior misconduct on the part of the defendant. *Robertson* v. *State*, (1974) 262 Ind. 562, 319 N.E.2d 833; *Jordan* v. *State*, (1952) 232 Ind. 265, 110 N.E.2d 751. He argues, however, that prior arrests may not be used as impeachable evidence of the defendant's bad character, since arrests are merely allegations of misconduct.

In *Jordan* v. *State, supra,* we stated at p. 268:

"When a defendant tenders his supposed good character in evidence, he thereby invites scrutiny and disclosure of specific instances of his misconduct to depreciate the weight of the testimony of his character witness, although the answers elicited may incidentally impute to him other guilt."

One way in which to depreciate the witness' testimony is to attack his actual knowledge of the defendant's general reputation. In many jurisdictions as well as in the federal courts, it has been held that a character witness for the defense may be cross examined as to what he has heard concerning a previous arrest of the defendant for a specific offense, in order to test that witness' knowledge of the defendant's reputation. *See Michelson* v. *United States*, (1948)

335 U.S. 469, 69 S.Ct. 213; Annot., 47 A.L.R.2d 1268, 1298. The rationale behind the rule was discussed by Justice Jackson in *Michelson* at 335 U.S. at 479-83, 69 S.Ct. at 220-22:

"The price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law has kept closed for his benefit and to make himself vulnerable where the law otherwise shields him. The prosecution may pursue the inquiry with contradictory witnesses to show that damaging rumors, whether or not well-grounded, were afloat—for it is not the man that he is, but the name that he has which is put in issue.

\* \* \*

"The inquiry as to an arrest is permissible also because the prosecution has a right to test the qualifications of the witness to bespeak the community opinion. If one never heard the speculations and rumors in which even one's friends indulge upon his arrest, the jury may doubt whether he is capable of giving any very reliable conclusions as to his reputation."

In *Lineback* v. *State*, (1973) 260 Ind. 503, 296 N.E.2d 788, *aff'd on reh.*, 301 N.E.2d 636, we held that the trial court had not erred in allowing the State to cross examine character witnesses for the defendant with reference to "prior arrests and convictions" of the defendant and with reference to the defendant's having been declared an *incorrigible juvenile*. The examination was allowed in order to "ascertain whether or not witnesses who had testified to appellant's reputation for good character knew or had heard rumors of prior misconduct of the appellant." Such questioning however, is proper only as a means of testing the witness' actual knowledge of the defendant's general reputation in the community, and not as a means of discrediting the defendant or of proving the truth of the assertion.

In the instant case the question complained of was within the proper scope of the State's cross examination.

## ISSUE V

Having found no merit in the defendant's specific allegations of error, it follows that there could have been no im-

proper cumulative impact, and there is nothing to consider under this assignment.

The judgment of the trial court is affirmed.

Givan, C.J. and Hunter and Pivarnik, JJ. concur; DeBruler, J. concurs in result.

NOTE.—Reported at 378 N.E.2d 828.