**William R. HACKNEY, Appellant–
Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

No. 56A03–9411–CR–404.

Court of Appeals of Indiana,
Third District.

April 27, 1995.

Transfer Denied Aug. 7, 1995.

J. Luann Humphrey, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Christopher L. Lafuse, Deputy Atty. Gen., Indianapolis, for appellee.

## OPINION

STATON, Judge.

A jury convicted William R. Hackney ("Hackney") of child molesting, a class B felony.[1] Hackney presents three (restated) issues for appellate review:

I. Whether the trial court erred in admitting the victim's testimony regarding an uncharged incident of domestic violence.

II. Whether the trial court erred in admitting the victim's testimony regarding Hackney's uncharged sexual misconduct.

---

1. Ind.Code § 35–42–4–3 (1993).

III. Whether judicial misconduct interfered in Hackney's right to a fair trial.

We affirm.

The facts most favorable to the verdict reveal that in the summer of 1991, Hackney was married to Tina Louise Riley ("Riley"). Hackney and Riley resided with their two children and S.H., Riley's nine-year-old daughter. On two separate occasions in 1991, Hackney forced S.H. to engage in oral sex. Several months later, S.H. told her school nurse and her mother, who reported the incidents of molestation to a welfare department caseworker. Hackney was subsequently arrested, charged and convicted of two counts of child molesting. This appeal ensued.

## I.

### Domestic Violence Evidence

 Hackney challenges the trial court's admission of statements by S.H. regarding Hackney's prior physical abuse of Riley. The admissibility of evidence is within the sound discretion of the trial court, and we review only for abuse of that discretion. *Brenneman Mechanical & Elec., Inc. v. First Nat. Bank of Logansport* (1986), Ind. App., 495 N.E.2d 233, *trans. denied.*

The admission of evidence of uncharged conduct is governed by Indiana Rule of Evidence 404(b), which provides in relevant part:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[,] . . .

In interpreting this rule,[2] our courts have determined that evidence of prior criminal acts is admissible only if introduced to prove something other than the defendant's bad character or propensity to commit the charged crime, the so-called "forbidden inference". *Bolin v. State* (1994), Ind.App., 634 N.E.2d 546, 548.

Hackney argues that the trial court erred in permitting S.H. to testify regarding alleged domestic abuse she observed Hackney inflict upon Riley, a prior bad act excludable under Rule 404(b). The State argues that this testimony was admissible for the limited purpose of showing S.H.'s state of mind; that is, to show that S.H. did not come forward about Hackney's abuse because she feared him.

The record supports admission of S.H.'s testimony for this limited purpose. S.H. testified that she was molested in the summer of 1991, but she did not report the abuse until February of 1992. Defense counsel elicited testimony from several witnesses regarding the timing and content of S.H.'s claims.[3] This testimony raised the inference that S.H. might have fabricated the events, thus putting S.H.'s state of mind at issue. The trial court properly instructed the jury regarding the limited admissibility of S.H.'s statements; the evidence was not admitted in order to make the "forbidden inference" of bad character. Admission of S.H.'s statements was a proper exercise of the trial court's discretion.

## II.

### Uncharged Sexual Misconduct Evidence

Hackney next argues that the trial court abused its discretion in admitting S.H.'s statements regarding an uncharged act of sexual misconduct involving Hackney, also governed by Rule 404(b). During defense

---

**2.** This rule was first established when our supreme court adopted Federal Rule of Evidence 404(b). *Lannan v. State* (1992), Ind., 600 N.E.2d 1334, 1336. The recently enacted Indiana Rule of Evidence 404(b) mirrors its federal counterpart. Accordingly, cases which discuss the federal rule apply with equal force to the Indiana rule. *See Levi v. State* (1994), Ind.App., 627 N.E.2d 1345, 1349, *trans. denied.*

**3.** In his brief, Hackney states that S.H.'s testimony about domestic abuse was inadmissible because it occurred prior to the defense putting her state of mind at issue. We disagree. The record indicates that defense counsel cross-examined State's witnesses Atkinson, Miller and Brown regarding the timing and content of S.H.'s claims prior to S.H. being called to testify.

counsel's extensive cross-examination of S.H., she revealed an earlier incident of molestation that occurred when the family resided in St. Louis, Illinois. The incident in question had been previously ruled inadmissible in a pre-trial order in limine. Defense counsel did not object to S.H.'s references to the St. Louis incident until the trial court questioned her in an attempt to clarify her testimony.

█ While it is true that admission of testimony regarding Hackney's prior sexual misconduct violated the order in limine, defense counsel's failure to lodge a contemporaneous objection to the evidence waived such error unless admission of the evidence constitutes fundamental error.[4] *Davis v. State* (1992), Ind., 598 N.E.2d 1041, 1048, *reh. denied, cert. denied,* — U.S. ——, 114 S.Ct. 392, 126 L.Ed.2d 340. The requirement of a contemporaneous objection applies notwithstanding a trial court's pre-trial ruling on the admissibility of such evidence. *Lenoir v. State* (1987), Ind., 515 N.E.2d 529.

█ This court will find fundamental error only when the error "is a substantial and blatant violation of basic principles rendering the trial unfair." *Davis, supra.* We will consider the potential for harm resulting from the error, and the likelihood that the questioned evidence may have contributed to the conviction. *Id.* Erroneously admitted evidence will be considered harmless when a guilty verdict is supported by overwhelming independent evidence. *Id.*

█ In the case at bar, S.H.'s references to Hackney's uncharged sexual misconduct were elicited, albeit inadvertently, by defense counsel during cross-examination. S.H. did not reveal any details of the prior misconduct except to mention it briefly after she was

confused by defense counsel's reference to a "first incident". We conclude that the admission of her cursory statements did not rise to the level of fundamental error. Moreover, the record contains ample independent evidence to support the jury's verdict. We find no error here.

### III.

### *Judicial Misconduct*

█ Hackney argues that the trial judge failed to conduct the trial in an impartial manner, thus prejudicing the jury against him. A fair trial before an impartial judge is an essential element of due process. *Harrington v. State* (1992), Ind., 584 N.E.2d 558, 561. The trial court has the duty to remain impartial and refrain from making unnecessary comments or remarks; the judge should refrain from actions that would indicate any position other than strict impartiality. *Id.* (quoting *Abernathy v. State* (1988), Ind., 524 N.E.2d 12, 13).

█ Hackney's first allegation of judicial misconduct stems from the trial judge's questioning of S.H. during defense counsel's cross-examination. It is well settled that the trial court has a duty to conduct the trial in a manner calculated to promote the ascertainment of truth, fairness and economy of time. *Rowe v. State* (1989), Ind., 539 N.E.2d 474, 476. The trial judge may, in his discretion, intervene in the fact-finding process in order to promote clarity.

We reject Hackney's claim that the trial court's questions were improper. The record indicates that the trial court asked several questions in order to clarify S.H.'s confusion over defense counsel's ambiguous references to a "first incident".[5] Such questions were

---

4. Defense counsel further waived any error when he failed to request that S.H.'s responses be stricken from the record and that the jury be admonished to disregard them. *Wade v. State* (1986), Ind., 490 N.E.2d 1097, 1104.

5. Specifically, the trial court questioned S.H. as follows:
 THE COURT: (to S.H.) But when you answered the first incident, which one are you referring to? Are you referring to the first incident in Brook?
 A: (S.H.) Yes.

THE COURT: Okay.
[DEFENSE COUNSEL]: Your Honor—
THE COURT: Throughout this testimony, does that help any?
[DEFENSE COUNSEL]: I appreciate your help, Your Honor. I guess, just for the record, I'm going to have to interpose some type of objection because somehow we came here, not through my questions to a response, referring to some other incident which has previously been ruled not a part of this case.
Record, pp. 321–322.

within the trial court's discretion to clarify S.H.'s testimony and promote economy of time.

▮ Hackney's second allegation of judicial misconduct stems from comments made by the trial court on several occasions indicating his impatience with defense counsel. We note that Hackney neither objected to the trial court's remarks nor moved for a mistrial; he has thus waived any error. *Cornett v. State* (1983), Ind., 450 N.E.2d 498, 505.

▮ Notwithstanding waiver, we reject Hackney's argument. Prior to instructing the jury, the trial court admonished the jury that both the defense and the prosecution had fully and fairly presented the evidence, and not to interpret any of the court's comments to counsel as against the defendant. He further instructed the jurors that they were the sole judges of the credibility of the witnesses. A proper admonishment to the jury is presumed to cure any alleged error, unless the contrary is shown. *Randolph v. State* (1978), 269 Ind. 31, 36, 378 N.E.2d 828, 832. Hackney has failed to demonstrate that the trial court's comments influenced the jury's decision. Because the jury heard overwhelming evidence of Hackney's guilt, any error not cured by the court's instructions was harmless. *Davis, supra.*

Affirmed.

GARRARD, J., concurs.

SULLIVAN, J., dissents and files separate opinion.

SULLIVAN, Judge, dissenting.

My examination of the record reflects an abundance of inappropriate and prejudicial remarks, comments and criticisms made by the trial court with respect to counsel, to jurors and to witnesses. Although perhaps no single instance would, of itself, dictate reversal, it is my belief that the cumulative effect of all the statements of the court prejudiced defendant's right to a fair trial.

A representative sampling of such comments and statements should demonstrate that the court's conduct, was prejudicial, even though I have no doubt that the court did not intend such effect. To be sure, during the reading of the preliminary instructions to the jury, the court said:

> "It is very important that you understand that nothing that I say or do or any gesture that I cause to happen in the confines of this courtroom, should be taken by you as any opinion or any direction from me how you should find or how you should react to any bit of evidence. I hope everyone will understand that.` Whether I, levity, fall asleep, whatever it happens to be, please understand that it's a very serious matter, but it is not my decision, it is yours. And do not draw anything from anything I say or do, other than my rulings with regard to evidence, okay?" Record at 103.

In my view, such preliminary comments do not diminish the adverse impact of the recurrent statements made throughout the trial.

At one point the defense was attempting to question S.H. about her relationship with her mother's present husband when the court interjected:

> "COURT: If you can show me how that's going to help prove or disprove whether or not your client compelled this young lady to lick his penis, I want you to do it! I'm going to overrule it and you go ahead with that line of questioning.
>
> MR. SHELMON:[6] You want me to tell the court that?"
>
> Record at 368.

This statement was susceptible to an implication that defendant had some burden to "disprove" his guilt.

At the conclusion of the State's case-in-chief, the following occurred:

> "THE COURT: The State rests?
>
> MR. HOOVER:[7] Subject to [jury review of exhibits].
>
> THE COURT: Does the defense rest, as well?

---

6. Mr. Shelmon was defense counsel.

7. Mr. Hoover was the Deputy Prosecuting Attorney.

MR. SHELMON: The defense does not rest, your Honor." Record at 428, 436.

The comment carries a possible implication that the court felt that the defendant should not or would not offer any defense.

During the defense's direct examination of the welfare caseworker there was this exchange:

"THE COURT: I thought you asked her what did she relate to.

MR. SHELMON: What Sheena related to her is, if you want me to rephrase it. What did Sheena tell her.

THE COURT: It's still hearsay.

MR. SHELMON: Is that the Court's ruling?

MR. HOOVER: No, I don't object to that.

THE COURT: Fine, pile it in." Record at 451.

Despite the fact that the deputy prosecutor had not made a hearsay objection, the court categorized the evidence as such but even more deprecatingly, implied that the defense was "piling" extraneous and inappropriate matters into the record.

The defense included testimony from Reverend Edwin Bontreger, the pastor of a church to which both the victim's mother and the defendant had belonged. Defense counsel asked a question concerning Tina Riley's assistance to another member of the congregation. Mr. Hoover objected and the following occurred:

"MR. SHELMON: We're sure going to connect it up, your Honor.

COURT: In my lifetime?

MR. SHELMON: Your Honor.

COURT: Okay." Record at 563

This deprecating question suggested that counsel was unduly prolonging the proceedings.

Very early in the proceedings, S.H. was testifying upon direct examination and the State sought to have her demonstrate, with the welfare caseworker, the manner in which the allegedly forced deviate conduct took place. The court overruled a defense objection stating:

"COURT: For that limited purpose, I'll permit it. But beyond that, I think the

young lady is doing an excellent job of testifying...." Record at 269.

Quite clearly the gratuitous comment indicated a favorable view toward both the child's testimony and her credibility.

Immediately after the testimony of Reverend Bontreger and just before the defendant was called to the witness stand, the court in an apparent attempt at levity, addressed one of the jurors:

COURT: Be seated please. Next individual to testify, I believe is going to be the Defendant, which of course is, am I wrong? Don't puzzle me like that. The testimony could be somewhat lengthy. Is there anyone that has a commitment that I need to deal with tonight?

JUROR: You and I?

COURT: You and I? Our date?

MR. SHELMON: Is that on the record?

COURT: 7:00, Nu–Joy?

JUROR: 6:30.

COURT: 6:30. Anybody else have a problem? I'm not calling it a problem, Mary Lou. Yeah, I have a commitment, I know. We'll get through the Defendant, you know there's group confession you could be going to instead.

JUROR: (inaudible)" Record at 601.

The suggestion of social contact may only have been at attempt at satirical humor. However, the concluding remark about "group confession" came immediately following the minister's testimony during which the prosecution inquired concerning possible pastor-penitent privilege in that particular church. The comment, in that context, was particularly denigrating to one of the defense witnesses and constituted a possible invitation to make light of his evidence.

Finally, during cross-examination of S.H. the exchange between the court and defense counsel even prompted the deputy prosecutor to intervene in an apparent attempt to regain some semblance of propriety and civility to the trial:

"MR. SHELMON: And we're trying to find out today, and I apologize that I'm up here, the Judge told me to do this.

COURT: I didn't tell you to do anything. You can conduct your investigation as you see fit. I simply said you could, where there's been no showing, we have to treat anything other as a normal witness. I didn't say badger her. I didn't say how to conduct your investigation.

MR. SHELMON: Well, your Honor—

COURT: But the proper way, if you'd like to know, is to ask the question, do you recall making this question, this question being asked and do you recall this response.

MR. SHELMON: Then I have to subject her to start reading this out loud. There's a reason I didn't do it, just because of what you said, what they just gave to me yesterday morning.

COURT: You're welcome to present any inconsistency you want. Whether she's eleven or one hundred and eleven.

MR. HOOVER: Will you gentlemen come to order?" Record at 312–13.

The remarks, comments and criticisms of the court in their cumulative effect strayed far afield from the objectivity and impartiality which trial courts are obligated to display. *See* Ind. Judicial Conduct Canon 3. The fact that counsel did not object each time the court injected itself into the proceedings with adverse implications to the defense, should not be viewed as a waiver. As stated in *Abernathy v. State* (1988) Ind., 524 N.E.2d 12, 15:

> "[A]n attorney may be reluctant to object to the judge's actions in the presence of the jury, fearing that an apparent conflict with the judge would cause more damage."

Perhaps for this reason also, I do not view the trial court's statement to the jury immediately following his exchange with juror Mary Lou Benner (Record at 32) and his comment about "group confession" to be curative. The court acknowledged that he intended a "bit of levity" and that when he seemed to "get short with one attorney over another, it's just an impulsive thing with me". Record at 602. He asked the jury to treat both sides fairly but in doing so once again called attention to his view that "[s]ometimes this things drag out. . . ." Record at 602. This statement does little, if anything to ameliorate the negative connotations already conveyed.

In these days of increasing incivility among and between members of the bar and the bench, the cautionary admonition of our Supreme Court in *Kennedy v. State* (1972) 258 Ind. 211, 280 N.E.2d 611, 620–621, delivers a message, perhaps even more salient and more necessary than when uttered twenty-three years ago. The Court said:

> "Care should be exercised to avoid indirect expression of opinion by the trial judge, and it is improper for the trial judge to ask questions which are reasonably calculated to impeach or discredit the witness or his testimony. Canon 8 of the Code of Judicial Conduct and Ethics reads in part:
>
> > 'A judge may properly intervene in a trial of a case to promote expedition, and prevent unnecessary waste of time, or to clear some obscurity, but he should bear in mind that his undue interference, impatience, or participation in the examination of witnesses or a severe attitude on his part toward witnesses may tend to prevent the proper presentation of the cause, or the ascertainment of the truth in respect thereto.'
>
> A jury of laymen will often have an awesome respect for the institution of the American trial judge. This can lead them to accord great and perhaps decisive significance to the judge's every word and intimation. It is therefore essential that the judge refrain from any actions indicating any position other than strict impartiality."

In light of the *Kennedy* precedent, I would reverse and remand for a new trial.