

**FILED**

Nov 22 2023, 9:16 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael D. Dean
Withered Burns, LLP
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael Ambrose Doyle, Jr., *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | November 22, 2023 <br><br> Court of Appeals Case No. 23A-CR-604 <br><br> Appeal from the Tippecanoe Superior Court <br><br> The Honorable Randy J. Williams, Judge <br><br> Trial Court Cause No. 79D01-2101-F2-4 |

**Opinion by Judge Riley.**
Judges Crone and Mathias concur.

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Michael Doyle (Doyle), appeals his convictions for dealing in methamphetamine (ten grams or more), a Level 2 felony, Ind. Code § 35-48-4-1.1(a)(1); and dealing in methamphetamine (between five and ten grams), a Level 3 felony, I.C. § 35-48-4-1.1(a)(1).

We affirm.

## ISSUES

Doyle presents this court with three issues, which we restate as:

> (1) Whether the trial court properly admitted the statements of a witness pursuant to the doctrine of forfeiture by wrongdoing;
>
> (2) Whether the trial court abused its discretion by admitting evidence of uncharged conduct; and
>
> (3) Whether the trial court abused its discretion when it refused Doyle's proffered instruction on circumstantial evidence.

## FACTS AND PROCEDURAL HISTORY

On January 14, 2021, around 8:50 p.m., Deputy Ryan Holloway (Deputy Holloway) of the Newton County Sheriff's Department brought his K-9 unit to the scene of a traffic stop in Goodland, Indiana, involving a vehicle in which Joshua Sweet (Sweet) was a passenger. After the K-9 officer alerted to the presence of narcotics in the vehicle, Deputy Holloway searched the vehicle and found what a field test and weighing at the scene indicated was approximately

9.5 grams of methamphetamine, as well as paraphernalia and a digital scale. Deputy Holloway confronted Sweet about the methamphetamine. Sweet told Deputy Holloway that he had procured the methamphetamine from Doyle and that Doyle was dealing drugs at the Red Roof Inn in Lafayette, Indiana, Room 102. Sweet allowed Deputy Holloway to access his cellphone and to read Facebook messages between himself and Doyle arranging for Sweet to come to the Red Roof Inn to meet with Doyle. Doyle told Sweet he was in Room 102, "All my cars outside," and "I need money," to which Sweet responded, "I got 1000 can you do two for that[.]" (Exh. Vol. VI, pp. 165, 166). Doyle told Sweet, "Yes right now in Hand in My Pocket it's no one else's it's so is that a yes come through or what" (Exh. Vol. VI, p. 166). Deputy Holloway had known Sweet for several years, and Sweet had provided the deputy with reliable information in the past. Deputy Holloway forwarded this information to the Lafayette Police Department (LPD).

[5]     In the early hours of January 15, 2021, officers with the LPD went to the Red Roof Inn in Lafayette with a K-9 unit, who alerted to the presence of narcotics in Room 102. Based on this alert, the officers procured a search warrant for the room which they executed that day. No one was in the room when the officers entered. The LPD officers found eleven baggies of what was later determined to be at least 49.48 grams[1] of methamphetamine in the top drawer of the room's

---

[1] Two of the eleven baggies were tested and confirmed to be methamphetamine. The remaining baggies were not tested but were determined to weigh 241.45 grams.

dresser/wall unit. In the same drawer officers found two baggies, one of which was later determined to contain .65 grams of cocaine, two glass pipes commonly used to smoke methamphetamine, and a digital scale which was later found to have Doyle's DNA on it. In the room, the officers also found $2,228 in cash, a box of sandwich baggies, a used syringe, and clothing and other items which appeared to belong to a female. Further investigation revealed that Doyle's red car was parked outside Room 102 when the officers made entry.

[6] While officers were still on the scene at Room 102, a silver Nissan sedan pulled up just outside Room 102. Officers recognized Doyle as the passenger in the Nissan, took him into custody, and provided him with his *Miranda* advisements. Doyle told the officers that he had been in and out of Room 102 over the previous day or two. The officers searched the Nissan and found what they suspected to be spice and partially consumed spice cigarettes. Doyle had $1,950 on his person. Subsequent investigation revealed that Room 102 had been rented to Riley Smith (Smith), a male friend of Doyle's.

[7] On January 15, 2021, the State filed an Information, charging Doyle with Level 2 felony dealing in methamphetamine (ten grams or more); Level 6 felony cocaine possession; Level 6 felony unlawful possession of a syringe; Class A misdemeanor possession of a controlled substance (spice or a synthetic drug); and Class C possession of paraphernalia. All these offenses were alleged to have occurred on or about January 15, 2021. In a separate Information the State alleged that Doyle was an habitual offender. On September 7, 2021, the

State filed a motion seeking to add two charges to the Information, namely Level 2 felony dealing in methamphetamine alleged to have occurred on January 5 and 6, 2021, and Level 3 felony dealing in methamphetamine alleged to have occurred on January 14, 2021. The Level 3 felony charge related to the dealing that Sweet had reported. On September 23, 2021, the trial court granted the State's motion to add the new charges. On November 3, 2022, Doyle filed a motion to sever the new Level 2 felony dealing in methamphetamine charge. On November 10, 2022, the trial court granted Doyle's motion to sever, and it granted a motion by the State to dismiss the Class A misdemeanor possession of a controlled substance (spice or lookalike substance) charge.

[8] On November 3, 2022, the State served Sweet with a trial subpoena. On November 14, 2022, the trial court convened Doyle's four-day jury trial. Sweet did not appear for the first day of trial, and, with Doyle present in open court, the trial court issued a writ of body attachment for Sweet. Due to Sweet's failure to appear, the State filed a motion to introduce evidence pursuant to Indiana Rule of Evidence 804(b)(5), seeking the admission of Sweet's January 14, 2021, statements to Deputy Holloway and alleging that Sweet was unavailable for trial due to Doyle's wrongdoing. On November 15, 2022, prior to the presentation of the evidence, the trial court held a hearing on the State's motion. The State presented evidence of a telephone call Doyle had made from jail on January 29, 2021, wherein Doyle read from the probable cause affidavit filed in the instant matter that on January 14, 2021, Sweet had reported his drug

dealing at the Red Roof Inn. Doyle instructed the woman on the other end of the call to contact his stepson, Hunter Snow (Snow). Doyle instructed the woman to tell Snow that Doyle loved him, that Snow should "take care of [Sweet,]" and that Snow should make sure to "do what [he] did to [his] dad to [Sweet]." (Exh. 7). Doyle explained in the call that Snow had previously beaten up his own father for Doyle. Doyle expressed his hope that Snow would "punch every fucking wall in the jail with that dude." (Exh. 7). During the call, the woman to whom Doyle was speaking expressed her willingness to assist and confirmed that Sweet was in Rensselaer. Doyle noted that his stepson Snow was also in Rensselaer.

[9] At the hearing on the State's motion to admit Rule 804(b)(5) evidence, the State also had admitted into evidence a voice text from Sweet received by the State on November 9, 2022, in which Sweet stated that he would "not be much help for you guys," "last time look what it did for me," and "so take it how you want to, endangered my family's lives." (Exh. 2). Sweet had also texted the State on November 14, 2022, that he would not appear to testify at trial and that he would turn himself in after Doyle's trial was over. In those texts, Sweet stated, "Last time I helped you it was published and my family was ran off the road several times and worse[.]" (Exh. Vol. VI, p. 23). In texts sent by Sweet later in the morning of the first day of Doyle's trial, Sweet stated that he feared being prosecuted for his testimony. After being assured that he could only be prosecuted if he did not appear, Sweet texted that he was not sure what happened on the night of January 14, 2021, because he was high and drunk,

implied he would not testify because he was not being paid, and stated that he would assert his Fifth Amendment right not to testify. Also admitted into evidence at the Rule 804(b)(5) hearing was a jailhouse telephone call made during the evening of November 14, 2022, from Doyle to a woman whom he instructed to call both the Newton County Jail and the Tippecanoe County Jail to attempt to locate Sweet and to find out when visitation hours at the jails were. Doyle instructed the woman to tell jail personnel that she was a friend or a relative if asked. At the close of the evidentiary hearing on the State's motion for Rule 804(b)(5) evidence, the trial court took the matter under advisement.

[10]     During opening argument, Doyle's counsel told the jury that it would hear evidence that Doyle had admitted to law enforcement that he had been in Room 102 but that he was only there to visit prostitutes, not to deal methamphetamine. The jury also heard testimony that drug dealers commonly work out of hotels, they usually have a larger amount of drugs in their possession than a mere user would, they often deal in more than one kind of drug at a time, they use scales and sandwich baggies as packaging when dealing drugs, and that they commonly have large amounts of cash on their persons.

[11]     Regarding the Rule 804(b)(5) evidence, the trial court made an in-trial ruling that the State had met its burden, noting that Doyle had been present in open court when it had issued a body attachment warrant for Sweet on the first day of trial, that Doyle had then placed the call about finding out if Sweet had been taken into custody, and that the reason Doyle had placed that call "wasn't to go ask him how he was." (Transcript Vol. III, p. 6). Thereafter, Sweet's

statements from the January 14, 2021, traffic stop and the contents of the messages he had shown the deputy between himself and Doyle were admitted into evidence.

[12] During trial, the trial court held a hearing on the admissibility of messages from Doyle's Facebook account. In these messages, Doyle arranged drug deals with several individuals, including Sweet and Smith, between September 9, 2021, and September 15, 2021. In some messages, Doyle stated he was at the Red Roof Inn, and, in an image captured on January 14, 2021, Doyle was seen standing next to a door labeled Room 102. The messages Sweet had shown to Deputy Holloway on January 14, 2021, were included within this evidence. Doyle objected that the proffered evidence was inadmissible character evidence prohibited by Evidence Rule 404(b) and that the evidence was irrelevant, given that it was unrelated to the charges before the jury. The trial court admitted the evidence over Doyle's objection pursuant to the "common scheme" exception to Rule 404(b) in that it showed Doyle's drug dealing over a period of time. (Tr. Vol. III, p. 98). The trial court also ruled that Doyle's use of Room 102 was relevant. At Doyle's request, the trial court issued the following limiting instruction to the jury pertaining to Doyle's Facebook records:

> Members of the jury[,] . . . any evidence of the prior acts may not be considered as a basis for an inference that . . . the defendant acted in conformity with his prior conduct or with his indicated propensity.

(Tr. Vol. III, p. 124).

[13]     At the final instruction conference, Doyle proffered the following instruction on circumstantial evidence:

> [W]here proof of guilt is by circumstantial evidence only[,] [i]t must be so conclusive in character and point [s]o surely and unerringly to the guilt of the accused as to exclude every reasonable theory of innocence.

(Tr. Vol. III, p. 227). Doyle's counsel argued that this was a pattern instruction, and was, thus, an accurate statement of the law. The trial court declined to give the instruction, ruling that the pattern instruction had changed and that the State had presented some direct evidence, rendering the instruction inapplicable.

[14]     During closing argument, Doyle's counsel reminded the jury of this limiting instruction. At the close of the evidence the jury found Doyle guilty of the Level 2 and Level 3 felony dealing charges and not guilty of all the remaining charges. After the jury returned its verdicts, Doyle admitted to being an habitual offender. On January 20, 2023, the trial court held Doyle's sentencing hearing and issued an aggregate twenty-eight-year sentence, with twenty-four years executed and four years suspended to probation.

[15]     Doyle now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

I. *Forfeiture by Wrongdoing*

Doyle challenges the admission of Sweet's January 14, 2021, statements to Deputy Holloway, which Doyle argues violated his Sixth Amendment[2] right to confrontation and the Indiana Rules of Evidence. We generally review the trial court's admission of evidence under an abuse of discretion standard. *Carr v. State*, 106 N.E.3d 546, 552 (Ind. Ct. App. 2018), *trans. denied*. However, when a claim of error in the admission of evidence is based upon the violation of a constitutional right, our standard of review is de novo. *Id*.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend. VI. In light of this guarantee, "a witness who makes testimonial statements admitted against a defendant will ordinarily be present at trial cross-examination, and . . . if the witness is unavailable, his prior testimony will be introduced only if the defendant had a prior opportunity to cross-examine him." *Giles v. California*, 554 U.S. 353, 358, 128 S.Ct. 2678, 2682, 171 L.Ed.2d 488 (2008) (citing *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.E.2d 177 (2004)). However, the *Crawford* court held that

---

[2] The State cited Indiana Evidence Rule 804(b)(5) in its motion to admit Sweet's statements to Deputy Holloway, and Doyle relied on his Sixth Amendment confrontation right in arguing the State's motion. On appeal, Doyle argues that the challenged evidence violated Article 1, section 13 of our state constitution and Indiana Evidence Rule 403. However, Doyle did not mention either Article 1, section 13 or Rule 403 at trial, and, therefore, we conclude that he has waived those arguments for purposes of appeal. *See State v. Allen*, 187 N.E.3d 221, 228 (Ind. Ct. App. 2022) ("Arguments raised for the first time on appeal, even ones based upon constitutional claims, are waived for appeal."), *trans. denied*.

this right to confrontation may be forfeited if the defendant procures the absence of a witness through his own wrongful conduct. *Id.* at 59, 1354; *see also Fowler v. State*, 829 N.E.2d 459, 467-68 (Ind. 2005) (recognizing the doctrine of forfeiture by wrongdoing). The doctrine of forfeiture by wrongdoing was developed to protect the integrity of judicial proceedings. *Galloway v. State*, 188 N.E.3d 493, 498 (Ind. Ct. App. 2022), *trans. denied*. The doctrine is only applicable where, in undertaking the actions that rendered the witness unavailable, the defendant had in mind the particular purpose of making that witness unavailable. *Giles*, 554 U.S. at 367, 128 S.Ct. at 2678; *see also White v. State*, 978 N.E.2d 475, 479-80 (Ind. Ct. App. 2012) (citing *United States v. Dhinsa*, 243 F.3d 635, 653-54 (2nd Cir. 2001), with approval for the proposition that the State need only prove that the defendant was at least partially motivated by the intent to silence the witness), *trans. denied*.

[18] In addition, hearsay, which is an out-of-court statement offered to prove the truth of the matters it contains, is generally inadmissible under the Indiana Rules of Evidence. Ind. Evidence Rules 801(c); 802. The Evidence Rules provide an exception to the general prohibition on hearsay where a witness is unavailable and the statement is

> offered against a party that has engaged in or encouraged wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness for the purpose of preventing the declarant from attending or testifying.

Evid. R. 804(b)(5). The State was required to establish forfeiture by wrongdoing by the preponderance of the evidence, whether as forming an exemption to the Confrontation Clause or as an exception to the hearsay rules. *Scott v. State*, 139 N.E.3d 1148, 1154 (Ind. Ct. App. 2020) (Sixth Amendment), *trans. denied*; *White*, 978 N.E.2d at 480 (Rule 804(b)(5)).

[19] The evidence before us establishes that initially at the scene of the January 14, 2021, traffic stop, Sweet identified Doyle as the source of the methamphetamine found in Sweet's vehicle, and Sweet reported that Doyle was dealing drugs out of the Red Roof Inn in Lafayette. On January 15, 2021, Doyle was taken into custody and charged with several drug-related offenses. That same day, Doyle's initial hearing was conducted at which Doyle filed a pro se request for a speedy trial, and his jury trial was initially set for May 4, 2021. On January 29, 2021, after having read copies of the probable cause affidavit which contained Sweet's January 14, 2021, statements, Doyle called a third party and instructed her to tell Doyle's stepson to batter Sweet, and that third party expressed her willingness to assist. After a series of continuances, Doyle's trial was eventually reset for November 14, 2021. Days before trial, on November 9, 2021, and after being served with a trial subpoena, Sweet indicated reluctance to assist the State, stated that his past cooperation had placed his family in peril, and expressed fear for the safety of his family. On the first day of Doyle's trial, Sweet communicated to the State that he would not appear, again expressing his fear his family's safety. Doyle was present when the trial court issued a body attachment warrant for Sweet when Sweet did not

appear for trial, and that night Doyle telephoned a third party and directed her to find out whether Sweet was being held in jail and when visiting hours were. Sweet did not appear on the second day of Doyle's trial, but he sent several text messages to the State providing shifting explanations for why he was not going to appear to testify against Doyle.

The trial court ruled that, with this evidence, the State had met its burden of proof to establish Doyle's forfeiture by wrongdoing. We agree. We may infer a defendant's intent to silence a witness "from a defendant's conduct and the natural consequences thereof." *See Smoots v. State*, 172 N.E.3d 1279, 1287 (Ind. Ct. App. 2021) (finding adequate evidence of Smoot's intent, even though his recorded jailhouse conversation did not contain any explicit statements of his intent that others should threaten or dissuade the witness from testifying). The timing of a defendant's actions is probative of his or her intent on this issue. *See White*, 978 N.E.2d at 481-82 (considering the temporal proximity of White's shooting of his wife to a hearing on a child custody dispute as probative of his intent to keep his wife from testifying at that hearing).

Here, Doyle placed the January 29, 2021, call to arrange to have his stepson batter Sweet after Doyle had been charged with four criminal offenses and after he had learned that Sweet had incriminated him. Within the context and circumstances of this case, the natural consequence of Doyle's communication was to intimidate Sweet into not cooperating with the State. Although Doyle argues that this call was too remote in time to his November 2022 trial date to be probative of his intent, we observe that the January 29, 2021, call was placed

shortly after Doyle had filed a speedy trial motion and was made only approximately three months prior to his first scheduled trial date. Doyle placed the second of the relevant calls during his trial after he was present in open court when a body attachment warrant had been issued for Sweet. After Doyle made these calls, Sweet again expressed concern for his family's safety and did not, in fact, appear for trial. The timing of Doyle's calls close to a previously scheduled trial date and within Doyle's actual trial also permits a reasonable inference that his communications were intended to procure Sweet's absence for trial. *See id*.

[22] We further conclude that there was sufficient evidence to establish that it was Doyle's communications that caused Sweet's absence. *See Scott*, 139 N.E.3d at 1155 (noting that the severity of the defendant's conduct is not at issue, only whether the defendant intended to procure the witness's absence and whether the defendant's conduct was of such significance that it kept the witness from testifying). Doyle twice directed others to make contact with Sweet, and he arranged to have his stepson batter Sweet. Thereafter, Sweet expressed his unwillingness to cooperate, both on November 9, 2021, and on November 14, 2021, the first day of Doyle's trial. In addition, in his last texts with the State on the second day of Doyle's trial, Sweet provided multiple, shifting answers about why he would not appear, from which it can reasonably be inferred that Sweet was being evasive about why he would not appear and that the real reason for his reticence was because of Doyle's actions. Doyle does not provide us with any legal authority for his implication on appeal that the State must

present direct evidence that the defendant's conduct caused the witness's absence, and we observe that we have sustained findings of forfeiture by wrongdoing based on circumstantial evidence. *See, e.g., Carr*, 106 N.E.3d at 554 (addressing Carr's argument that he never explicitly urged the witness not to appear for trial by noting that the circumstantial evidence presented by the State supported a reasonable conclusion that the witness did not appear due to Carr's efforts). Accordingly, we conclude that the admission of Sweet's statements through Deputy Holloway's testimony did not violate Doyle's Sixth Amendment confrontation right and was not an abuse of the trial court's discretion in light of Rule 804(b)(5).[3]

[23] However, even if the trial court had erred in admitting the challenged evidence, we would still affirm his convictions. "The improper admission [of evidence] is harmless error if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing court there is no substantial likelihood the challenged evidence contributed to the conviction." *Hoglund v. State*, 962 N.E.2d 1230, 1238 (Ind. 2012). Here, the State presented the jury with Facebook messages between Sweet and a person named "Michael" in which the two arranged a drug transaction at Room 102 of the Red Roof Inn. In addition, Doyle admitted that he had been present in Room 102 close in time to

---

[3] Given our conclusion, we do not address the State's argument that Doyle failed to establish on appeal that Sweet's statements were testimonial in nature so as to render the Confrontation Clause applicable. We note, however, that in arguing for the admissibility of Sweet's statements in the trial court, the State did not dispute that Sweet's statements were testimonial.

law enforcement's discovery of drugs there, his car was parked right outside Room 102 when the search of the room occurred, Doyle showed up at Room 102 while the investigation was ongoing, Doyle had a large amount of cash on his person, and his DNA was found on the digital scales found next to a large, dealer-sized quantity of methamphetamine. (Exh. Vol. p. 10; Tr. Vol. II, pp. 128-30). As the State correctly points out, the jury was entitled to infer Doyle's intent to deal the methamphetamine found in Room 102 based solely on the fact that 49.48 grams of methamphetamine were found there. *See* I.C. § 35-48-4-1.1(b)(2) (requiring an amount of twenty-eight grams or more of methamphetamine to independently sustain a finding of an intent to deal). Given this substantial additional evidence of Doyle's guilt, we conclude that any error in the admission of the challenged statements was harmless.

## II. Facebook Records

[24] Doyle next contends that the trial court abused its discretion when it allowed into evidence his Facebook messages arranging uncharged drug deals with multiple people. We review the trial court's decision on the admission of evidence for an abuse of its discretion. *Fansler v. State*, 100 N.E.3d 250, 253 (Ind. 2018). We will reverse only where the trial court's decision is against the logic and effect of the facts and circumstances. *Id*.

[25] Indiana Evidence Rule 404(b) generally prohibits "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character[,]" but it also provides that such evidence "may be admissible for another purpose, such

as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." In addition, any Rule 404(b) evidence must also pass Rule 403 muster, in that its probative value must not be substantially outweighed by a danger of unfair prejudice or confusion of the issues. *Hall v. State*, 137 N.E.3d 279, 284 (Ind. Ct. App. 2019).

[26] Doyle contends that the challenged evidence was admitted in contravention to Rule 404(b) because it served only to show his propensity to deal drugs and that the evidence was not admissible for any other permitted purpose. Doyle also argues that the prejudicial effect of the evidence of his prior dealing greatly outweighed its probative value. The State counters that the challenged evidence was admissible to show Doyle's knowledge of the drugs found in Room 102 and that its admission was not barred by Rule 403.

[27] We find the case of *Cannon v. State*, 99 N.E.3d 274 (Ind. Ct. App. 2018), *trans. denied*, to be instructive to the resolution of this issue. At Cannon's trial on drug dealing and possession charges, over Cannon's objection, the trial court allowed his girlfriend to testify that she had helped him in the past by driving him to drug deals and that Cannon sold heroin and cocaine to support himself. *Id*. at 277. The trial court instructed the jury that the girlfriend's testimony about Cannon's prior dealing had been received solely on the issue of Cannon's intent or knowledge and that it should only be considered for that limited purpose. On appeal, this court concluded that any error in the admission of this evidence was harmless, given the other substantial evidence of his guilt and that

[t]he jury was specifically instructed to use evidence of Cannon's bad acts only for the purpose of evaluating his intent or knowledge, which is presumed to cure any error that might have occurred, unless Cannon can show otherwise, which he did not do. *See Hyppolite v. State*, 774 N.E.2d 584, 598 (Ind. Ct. App. 2002) ("The trial court gave the jury an admonishment concerning the situation, and that is presumed to cure any error."), *trans. denied*; *see also Hackney v. State*, 649 N.E.2d 690, 694 (Ind. Ct. App. 1995) ("A proper admonishment to the jury is presumed to cure any alleged error, unless the contrary is shown."), *trans. denied*.

*Id*. at 280. In affirming the trial court, we observed that Cannon had failed to meet his burden to overcome the relevant presumption by pointing to anything in the record to indicate that the jury had failed to follow the trial court's instruction. *Id*.

[28] We reach the same result here. As we have already observed, there was substantial evidence of Doyle's drug dealing apart from the challenged evidence. In addition, at Doyle's request, the trial court issued an instruction that the evidence of Doyle's prior dealing as contained in his Facebook messages could not be considered by the jury as showing that he had acted in conformity with that conduct for purposes of the instant charges. Doyle does not take issue with the substance of this instruction or contend that it was somehow inadequate. On appeal, Doyle does not address the trial court's instruction to the jury at all, let alone provide us with any indication that the jury did not follow this instruction. As such, we conclude that Doyle has failed to overcome the presumption that the jury followed the trial court's instruction

which rendered any error in the admission of the Facebook evidence harmless. *See id.*; *see also Isom v. State*, 31 N.E.3d 469, 480-81 (Ind. 2015) (declining to address the merits of Isom's claim of error in the denial of his mistrial motion based on the admission of evidence, where the trial court had issued an admonishment, noting the strong presumption that juries follow the trial court's instruction and that an admonishment cures any error).

### III. *Final Instruction*

[29] Doyle contends that the trial court erred when it rejected his proffered instruction on circumstantial evidence. "The trial court has broad discretion as to how to instruct the jury, and we generally review that discretion only for abuse." *McCowan v. State*, 27 N.E.3d 760, 763 (Ind. 2015). Upon reviewing a trial court's decision to reject a proposed instruction, we consider (1) if the tendered instruction correctly states the law; (2) if there was evidence to support giving the instruction; and (3) if the substance of the instruction was covered by other instructions that were given. *Id.* at 763-64.

[30] Doyle contends that his proffered instruction was a correct statement of the law and that it was supported by the evidence. However, Doyle's proposed instruction provided that "[W]here proof of guilt *is by circumstantial evidence only[,]* [i]t must be so conclusive in character [and point] so surely and unerringly to the guilt of the accused as to exclude every reasonable theory of innocence." (Tr. Vol. III, pp. 230) (emphasis added). Therefore, this instruction would only be supported by the evidence if the State's case against Doyle was entirely circumstantial. It was not.

[31] As our supreme court explained in *Hampton v. State*, 961 N.E.2d 480, 489 (Ind. 2014), direct evidence is "evidence that directly proves a fact, without an inference, and which in itself, if true, conclusively establishes that fact[,]" while circumstantial evidence is that which "proves a fact from which an inference of the existence of another fact may be drawn." Here, Doyle was charged with Level 3 felony dealing methamphetamine to Sweet on January 14, 2021.[4] As we have already concluded, the trial court properly admitted Sweet's January 14, 2021, statements to Deputy Holloway that Doyle was the source of the methamphetamine found in Sweet's car and that Doyle was dealing methamphetamine out of Room 102 at the Red Roof Inn. This was direct evidence that was probative of whether Doyle was dealing drugs on January 14, 2021, as charged in the Level 3 felony dealing in methamphetamine Information. *See id*. Even if the State's case on the other charges was purely circumstantial, Doyle did not proffer any alternate instruction limiting his instruction to other charged offenses apart from the Level 3 felony dealing charge. Therefore, the trial court did not abuse its discretion in declining to give Doyle's proffered instruction. *See Griffin v. State*, 16 N.E.3d 997, 1007 (Ind. Ct. App. 2014) (finding no error in the trial court's rejection of Griffin's

---

[4] Doyle argues that he "was not convicted of selling drugs to Sweet." (Appellant's Reply p. 9). However, Doyle was charged with and convicted of Level 3 felony dealing in methamphetamine for knowingly or intentionally delivering between five and ten grams of methamphetamine to Sweet on January 14, 2021. Although the Information did not specify that this charge related to Doyle's dealing to Sweet, during closing argument, the deputy prosecutor specifically discussed the details of the methamphetamine found in Sweet's car on January 14, 2021, and Sweet's statements to Deputy Holloway in relation to this charge: "[Sweet] told Holloway he got meth from [] Doyle and that he got it at the Red Roof Inn." (Tr. Vol. III, p. 235).

proposed instruction on circumstantial evidence, where the State presented direct evidence to support its allegations).

[32] Even if the trial court had erred in rejecting Doyle's proposed instruction, we would still sustain Doyle's convictions. We will only reverse a conviction based on instructional error if the defendant establishes that the error prejudiced his substantial rights. *Hernandez v. State*, 45 N.E.3d 373, 376 (Ind. 2015). Doyle does not develop any argument regarding how he was prejudiced by the claimed instructional error. Therefore, he has failed to persuade us that reversal is merited.[5] *See id*.

## CONCLUSION

[33] Based on the foregoing, we hold that Sweet's statements were properly admitted, any error in the admission of Doyle's Facebook messages was harmless, and that the trial court acted within its discretion when it rejected his proposed instruction.

[34] Affirmed.

[35] Crone, J. and Mathias, J. concur

---

[5] In light of our conclusion on this issue, we do not address Doyle's contention that his proffered instruction, which was expressly disapproved of by our supreme court in *Hampton,* 961 N.E.2d at 483, 491, was "revived" by this court's unpublished decision in *Wooldridge v. State*, 213 N.E.3d 1064, slip op. (Ind. Ct. App. June 26, 2023). (Appellant's Reply p. 8).